𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

TYLER v. TOMS AND ALS.

December 17.

1. Where two commissioners are appointed to sell land, and they are required before proceeding to act to execute a bond with security conditioned according to law, each executes a separate bond with the other as his surety. HELD : This is not a compliance with the decree, and that though the bonds were given in court.

2. The sale of the land is to be on a credit, and bonds to be taken for the several deferred payments, and the title to be retained. The sale is made, the bonds taken, and the sale reported to the court; but there does not appear to have been a decree confirming the sale. As the bonds fall due the purchaser pays the money to one of the commissioners, and he deposits it as collected in a bank to his credit as commissioner, not using it or mingling it with his own, but it is lost by the failure of the bank. HELD :

    1. The purchaser is bound to pay the purchase money of the land again.

    2. The commissioner having received the money without authority to receive it, is liable to the purchaser for the amount so paid.

    3. The commissioner may be proceeded against by rule in the cause, and an execution of *fieri facias* may be sued out against him for the money.

In March, 1857, Mary R. Toms and six others, her sisters, who were infants suing by their next friend, filed their bill in the circuit court of Hanover county against Obediah Archer, in which they stated that their mother, in her lifetime, had purchased a small tract of fifty acres of land from said Archer for which they believed she had paid;

but the said Archer insisted there was a balance still due for the land, and he refused to convey the land to her.

Archer died before answering the bill, and the plaintiffs filed an amended bill making his executor and devisees defendants, and say that it will be for the interest of the plaintiffs that the land should be sold, and they understand the defendants are willing it shall be sold, and they pray that a sale of it may be made.

The defendants answered, and whilst not admitting the facts stated in the original bill, they express themselves willing that the prayer for a sale of the land may be granted.

On the 12th of March, 1858, the court made a decree by which William H. Newton and G. W. Richardson were appointed commissioners to sell the said tract of land upon the terms—for cash as to so much as will pay the costs and charges of the sale, and the balance on a credit of four, eight and twelve months, each for the same amount, with bonds and good security, carrying interest from the date of sale; the title to be retained until, &c. But the said commissioners were not to proceed to execute the decree until they jointly, or each of them separately, or such one of them as should act under the decree, should execute a bond in the penalty of $1,000 before the clerk of the court in his office, or in open court, conditioned according to law.

Newton and Richardson were the counsel in the cause, and both of them were then in independent circumstances, and they appeared in court and each of them executed a bond as commissioner under said decree with the other as his surety.

On the 28th of September, 1858, the commissioners returned their report, in which they stated that after having advertised the time, place and terms of sale in all respects in accordance with the decree, they proceeded to sell the land at public auction, when John P. Tyler became the

purchaser at $5.65 per acre, which, estimating the tract at fifty acres, made $282.50. That a short time after the sale they received from him $100 and 26 cents of interest upon it, and for the credit payments they had taken his bonds each for $60.83⅓ payable at four, eight and twelve months, with interest from the day of sale—viz: the 18th of May, 1858. That out of the cash payment they retained for their commission and costs of sale $52.97, leaving in the hands of Commissioner Richardson $47.29 subject to the further order of the court in the cause.

It appears by an endorsement on the papers that this cause was dismissed at the March term, 1859, but the order book does not show the fact. Certainly the record does not show that anything further was done in it until September, 1869, when, on the motion of the plaintiff, it was ordered that the cause be reinstated upon the docket. In the meantime a number of the parties, both plaintiffs and defendants, had died, and the cause having been regularly revived, the court on the 1st of October, 1869, made an order directing George W. Richardson, the surviving commissioner, to report to the court what disposition he had made of the money and bonds mentioned in his report made in the cause on the —— day of ———, 186—. And if there be in his hands any funds received by him as commissioner appointed by this court to sell the land in the bill mentioned, he is directed to deposit such moneys so remaining in his hands into some bank of deposit in the city of Richmond to the credit of this suit, and to return a certificate thereof, with any bonds or notes he may have in his hands belonging to this cause, to the clerk's office of the court, &c.

In March, 1870, Richardson made his report. He states that he collected from Tyler the amounts due upon his bonds for the purchase of the land, and that he deposited the same in the City Savings Bank of Richmond, to his credit or the credit of himself and Newton, as commis-

sioners in the case of *Toms* v. *Archer*. That it was not deposited in his own name individually, and was in no wise used by him or mingled with his funds. He is also under the impression, although such a decree cannot be found, that the deposit in the City Savings Bank was made under a decree of the court in this cause; but of this he is not certain. The fund remained in the said bank until after the war broke out, and then, under a peremptory order of the Confederate congress, it was drawn out and invested in Confederate bonds.

In May, 1873, the court directed a rule upon Jno. P. Tyler, to show cause, if any he can, why the court should confirm the sale of the land made by Commissioners Richardson and Newton on the 18th of May, 1858 ; and if the sale should be confirmed, why the said Tyler should not now be required to pay fully all of the deferred payments of the purchase money of said lands.

In November, 1873, Tyler filed his response to the rule. He insisted that the commissioners had executed their bonds with surety, and had proceeded precisely as the decree directed in making sale of the lands when he became the purchaser, and complied with the terms of the decree of the court ; and that the sale should now be confirmed ; that he had paid the cash payment and executed his bonds with good and sufficient security, and had paid said bonds to said commissioners. And he said that in the suit of *Tyler* v. *Richardson, &c.*, lately depending in said court, it was decreed and ordered on the 3d of October, 1867, that the said George W. Richardson, as surviving commissioner, should convey with special warranty the said tract of land to this respondent, which was done on the 28th of January, 1868. And he exhibited the decree and the deed with his answer.

He further states that the tract of land contains but 39¾ acres; and that since buying it he has erected valuable

improvements on said land—a dwelling house worth $1,000, good corn-house, stable, smoke-house, &c.—all worth from $1,500 to $2,000. He insists that if the said commissioners acted irregularly or erroneously in collecting the said money and depositing the same in the City Savings Bank before the said sale was confirmed, that did not affect his rights.

In November, 1875, the court decreed that Tyler should be made a defendant in the cause. And without deciding any of the issues raised, the cause was removed to the chancery court of Richmond. And it came on to be heard in that court on the 9th of December, 1876, when the court made a decree confirming the sale made to Tyler. And being of opinion that Tyler had properly paid on the purchase price of said land only the sum of $52.97, the costs of suit at date and the expenses of sale, further decreed that the said John P. Tyler do within ninety days pay into the Union Bank of the City of Richmond, to the credit of the court in the cause, the residue of the purchase money—to-wit, the sum of $229.53, with interest thereon from the 18th of May, 1858, until paid—that being the sum remaining due and unpaid, after deducting the said sum of $52.97 from the sum of $282.50, which was the whole of the purchase money.

And it was further decreed that upon the deposit of said sum of money and interest, a commissioner named was directed to convey the land to Tyler. And it was further decreed that if the money and interest was not deposited, that commissioners named should proceed to sell the land in the mode and on the terms stated in the decree.

It was further decreed, that the deed executed by Richardson, special commissioner in this suit, to John P. Tyler, on the 28th of January, 1868, conveying to him with special warranty the land mentioned in this decree, be set aside and annulled.

And on motion of Tyler, a rule was made on Richardson returnable to the next term of the court to show cause, if any he can, why a decree should not be rendered against him, the said Richardson, in favor of said Tyler, for the ·sum of money erroneously and improperly paid to said Richardson by said Tyler on account of said purchase money (over and above the sum of $52.97), with interest and costs.

In December, 1876, Tyler presented his petition to the court, in which, after stating the sale of the land, he says he was at once put into possession, and believing he had a good title to the land, he proceeded to clear up and improve it, and erected on it permanent improvements, mentioning the same he had mentioned in his answer. He says that the court, having held that the said sale did not confer a good title, and having decreed that the land shall be sold unless petitioner pays the amount he gave for it; that petitioner cannot pay said amount, and therefore the land will have to be sold.

He therefore prays that he may be allowed for the said improvements on said land, over and above the use and occupation of said land, and that the court will suspend the operation of the decree and empanel a jury to assess the damage of the said J. P. Tyler, and the allowance to him for such improvements.

Richardson answered. He set out substantially the same facts as to the sale of the land, the receipt, deposit and investment of the money, as stated in his report. He stated that the circuit court of Hanover was accustomed to direct funds under its control to be deposited in the City Savings Bank, and filed several orders of that court, in which such deposits were dircted. He insisted that he had done what the court would have done if the money had been brought into court, and that the loss would have been the same; and that after the long delay which had oc-

curred, and the change in the condition of things, it was too late for Tyler, at whose instance they had received the money, to hold him, the commissioner, responsible for it.

He insisted further, that he was not responsible to the said parties, because under the decision of the court the money received was not received by him as commissioner; and on so receiving it he acted *ultra vires*, and hence is not liable to said parties, as his liability to them arises solely from his acts as commissioner.

He insisted further he was not liable to Tyler, because whilst he was in fact commissioner, under the decision of the court, he did not receive the money as commissioner, and as such had no authority to receive it; and in so receiving it from Tyler he was his agent or banker, Tyler trusting him with the keeping of it, to be applied to the payment of said purchase money, when the said commissioner or some other agency appointed by the court was directed to receive it; and his liability to Tyler is direct between them, and for which said Tyler has an adequate remedy at law.

And he insisted further that the rule does not furnish a remedy for settling any question between himself and Tyler, and that Tyler cannot proceed in this cause by such rule.

The cause came on to be heard on the 20th of February, 1877, when the court made a decree that John P. Tyler do recover against George W. Richardson the sum of $229.53, with interest thereon from the 18th of May, 1858, till paid, in full satisfaction of the amount improperly paid to the said George W. Richardson, special commissioner, on the purchase price of the land sold by Richardson and Newton, special commissioners, and for which amount so improperly paid a decree was entered in this cause on the 9th of December, 1876, against said John P. Tyler. And it was further decreed that Richardson do, within thirty days from

the date of this decree, pay into the Union Bank of the City of Richmond, to the credit of the court in this cause, the said sum of money, with interest as decreed as aforesaid, in favor of John P. Tyler, and file a certificate, &c. And unless said George W. Richardson shall within thirty days, &c., pay said sums of money and interest and file said certificate, &c., then the clerk of this court, upon application to him by said John P. Tyler or his counsel, may issue execution upon this decree in favor of said Tyler. And the court being of opinion that said John P. Tyler is not entitled to any allowance for the improvements in his petition mentioned, doth refuse to grant the prayer of said petition.

Tyler applied to a judge of this court for an appeal and *supersedeas;* which was awarded.

*Meredith* and *Wm. R. Aylett,* for the appellants.

*Geo. P. Haw* and *Sands, Leake & Carter,* for the appellees.

STAPLES, J., delivered the opinion of the court.

The decree of the circuit court of Hanover, in the case of *Toms* v. *Archer et als.,* directed the land which is the subject of controversy to be sold on a credit of four, eight and twelve months, except so much as was necessary to pay costs and charges of sale. The sale was accordingly made on the 18th of May, 1858, by Messrs. Newton and Richardson, the commissioners appointed. At that sale the appellant became the purchaser—he made a cash payment which was more than sufficient to satisfy the costs and charges of sale, and he executed his three bonds for the deferred installments of the purchase money—the title being also retained as further security for their payment.

The decree in question did not authorize the commissioners to collect these installments, nor does it appear

that any decree was ever entered in the cause empowering them to make such collection. It is also conceded, and if not conceded it plainly appears, that the commissioners did not execute the bond required by the statute of special commissioners or receivers, before collecting money under a decree of any court. (Code of 1873, chap. 174, § 1.) The appellant, however, believing the commissioners authorized to collect the purchase money, paid to Col. Richardson the full amount of each of his bonds as they arrived at maturity.

There is no reason to attribute bad faith to the appellant in making, or to Col. Richardson in receiving, these payments. The latter now claims that as the fund was not then ready for distribution he deposited it in the Savings Bank of the City of Richmond, where it perished by the insolvency of the bank at the close of the war. It does not appear, however, that the court or any of the parties were ever informed of the collection of the money, or its deposit in bank, until the year 1870, when a report was made by Col. Richardson stating the facts.

From what has already been said it is perfectly clear that the payments by the appellant to Col. Richardson were unauthorized, and that the land in his hands is still bound for the deferred installments of the purchase money as fully as though no such payments had been made. Upon this point the cases of *Hess et als.* v. *Rader and Wife,* 26 Gratt. 746, *Lloyd* v. *Erwin's Adm'r,* 29 Gratt. 598, are express authorities. Indeed the latter case in most of its features is identical with the present.

The appellant alleges, however, that since his purchase he has made permanent improvements on the land, for which he claims compensation. This demand is asserted under the statute which authorizes a defendant against whom a decree or judgment is rendered to claim compensation for valuable improvements made under a title believed

to be good. The statute, however, has no application to the case of a purchaser at a judicial sale, against whom a claim for the purchase money is asserted, and in whose favor there has been no decree of confirmation. Such a purchaser is a mere preferred bidder without vested rights in the property, and whatever improvements he may make upon the land are made subject to all the conditions attaching to a purchaser before confirmation. If in any case a vendee can claim against his own vendor compensation for improvements as set off against a demand for purchase money, a purchaser at a judicial sale which has not been confirmed cannot do so; for in the nature of things he has no just cause to believe that his title is good. We are therefore of opinion that the chancery court did not err in holding the land still bound for the purchase money, or in rejecting the claim for improvements.

The next matter to be considered is the decree against Colonel Richardson. The chancery court having decreed against the appellant for the unpaid purchase money, rendered a decree in his favor against Colonel Richardson for the amount paid him by the appellant. It is this decree we are now to consider. As already stated, the appellant paid the money to Colonel Richardson believing he was authorized to receive it as commissioner, and the latter received the money honestly but erroneously, believing the same thing. The appellant being compelled to pay the money over again may very properly require Colonel Richardson to refund the amount so illegally received by him. What the latter did with the money, whether he appropriated it to his own use or deposited it in bank where it was lost, does not at all concern the appellant. Colonel Richardson was not the agent or bailee of the appellant; he did not profess to act as such in depositing the money in bank, but rather as the agent or commissioner of the court. Having illegally assumed authority to collect the

money, he cannot escape liability to restore it to the owner upon the ground it was lost without his fault or negligence.

The question arises, however, how is that liability to be enforced? Is a separate suit necessary, or may the object be effected by a rule? The latter course was pursued by the chancery court, and a rule was awarded against Col. Richardson to show cause why a decree should not be rendered against him in favor of the appellant for the sum of money erroneously and improperly paid him on account of the purchase made by the appellant.

We are of opinion that there was nothing irregular or improper in this mode of proceeding. A commissioner or receiver is an officer of the court, subject to its supervision and control. Whenever complaint is made against him for loss or injury sustained by reason of negligence or improper conduct, the court which appointed the receiver may take cognizance of the complaint, or it may permit the person aggrieved to bring an action against him. When a party to a cause, or even a third person, is interested in a fund in a receiver's hands, he may apply to the court for relief; and the court may make whatever order is necessary for the restitution or proper appropriation of the fund, and if disobeyed, the order may be enforced by process of contempt. Kerr on Receivers, p. 203–212; High on Receivers, §§ 255–286. Whether according to the English practice an order made against a receiver upon a rule for the payment of money is enforceable by execution, as well as by process of contempt, the books do not clearly show. *Foster* v. *Morton, In re Bell's Estate,* 9 Eq. Cas. (Law Rep.) 171, it was held that where a receiver makes default in payment of a balance due by him, payment may be enforced by committal. It was made a question, however, whether an attachment might be had, because it was said an attachment could not issue against a person not a party to the

suit; but it was held that a writ of *fieri facias* might issue by the special leave of the court. Our statutes have removed all difficulties on this point ; for with us every order for the payment of money has the force of a judgment, and may be enforced by execution. Code of 1873, chap. 182, § 1, 2.

. It has been said, however, that Col. Richardson, in receiving the appellant's money, was not acting as a receiver of the court, but as an individual; for so the chancery court held, and so this court decides in declaring the payment to him to be illegal. To this it is a sufficient answer that Col. Richardson certainly acted as commissioner, and collected the money under color of his office. He, of course, cannot escape responsibility by relying upon his illegal exercise of authority. The rule laid down in Kerr on Receivers, p. 211–212, is very applicable to the case. A person who having assumed to himself, but improperly neglects the duties of a receiver, whilst the parties interested consider him to be acting as receiver, makes himself responsible for any of the property lost through his neglect.

In what has been said in this opinion it is not intended to reflect in the slightest degree upon Col. Richardson. There is nothing in the record which raises even a suspicion of bad faith on his part. He collected the money under the honest but erroneous impression he was authorized to do so. The parties entitled to the fund are not bound by his act and the appellant is entitled to receive back his money. The form of proceeding against Col. Richardson has done him no injustice. In his response to the rule he has made a full defence, and has had all the advantage which he might have derived from an answer to a bill in chancery. We are therefore of opinion the decree of the chancery court is right and should be affirmed.

In thus passing upon the question of Col. Richardson's liability, it has been assumed that he is properly before·

Tyler v. Toms and als.

this court.    The appeal in this case was taken not by him, however, but by the purchaser, and it may be a question whether Col. Richardson is, *an appellee* in the cause in which the appeal is taken, and therefore entitled to complain of alleged errors to his prejudice.   Instead of deciding that question we have considered it would be more satisfactory to pass upon the merits, and thus end the controversy by an affirmance of the decree.

DECREE AFFIRMED.