# Richmond.

FLANARY & OTHERS v. KANE & OTHERS.

JANUARY 14, 1904, AND MARCH 10, 1904.

1. EQUITABLE TITLE—*Payment of Purchase Money.*—One who purchases and pays for a tract of land becomes the equitable owner thereof, though he cause his vendor to convey to a third person to whom he sells it.

2. PURCHASER—*Notice—Recitals in Deed—Judgments.*—Where the recitals of a deed under which a purchaser claims show that a third person was formerly the equtable owner of the land, such purchaser is charged with notice of that fact, and the land is bound in his hands for prior judgments against such equitable owner which have been duly docketed.

3. APPEAL AND ERROR—*Commissioner's Report—Failure to Except.*—A commissioner having reported that the whole of a tract of land which had been aliened by a judgment debtor and another was liable to the lien of certain judgments mentioned, and that report having been confirmed without exception, it is too late to raise the objection for the first time in this court that only half of the land is liable, in the absence of anything in the record to show objection on behalf of the former apparent owner of the other half, or that the question was in any way raised in the trial court.

4. DEEDS—*False Descriptions—Restrictive Clauses—Case in Judgment.*—If the subject matter of a deed is sufficiently and clearly ascertained, a false description superadded may be rejected as surplusage, but to come within this principle it must appear that the other words of the grant or devise give a clear, certain, and unambiguous description of the subject granted or devised, and that the particulars given are but words of suggestion and affirmation superadded as further description of a subject otherwise sufficiently described. If, on the other hand, such particulars are restrictive in their character, if they serve to narrow and limit the

extent of the subject pointed out by the other words, they can never be rejected. In the case at bar the words of the grant described the land conveyed as "lying in the county of Wise," and will not be extended to other portions of grantor's land lying in an adjoining county.

5. JUDGMENTS—*Limitation of Time for Enforcement—Adverse Possession.*—The statute of limitations fixing the time within which an action of ejectment may be brought to recover land has no application to a suit to enforce the lien of a judgment on land. The lien of a judgment is a fixed, definite, statutory lien, running for the time prescribed by section 3573 of the Code, and enforceable not only against lands while in the hands of the judgment debtor, but also in the hands of subsequent purchasers, whether they had actual notice or not, if the judgment was duly docketed.

6. RAILROADS—*Liability for Judgments—Sale of Part of Roadbed.*—Although a railroad company is a *quasi* public corporation, if it acquires, by private purchase, land which is subject to the lien of a judgment, and places a part of its roadbed thereon, the land so acquired with the roadbed thereon may be subjected to the lien of the judgment.

7. JUDGMENTS—*Improvements.*—The provisions of chapters 124 and 125 of the Code of 1887 on the subject of improvements have no application to a judgment creditor seeking to enforce his lien upon the land upon which the improvements have been made.

8. JUDGMENTS—*Enforcement—Conditions.*—The maxim that he who asks equity must do equity only applies to an actor who is seeking some equitable relief. It has no application to a judgment creditor seeking to enforce his lien on debtor's land. He is not asserting an equitable right, or seeking equitable relief. His judgment is a legal lien which he has the right to enforce without terms or conditions.

9. JUDGMENTS—*Improvements—Notice of Unrecorded Deed.*—As against the creditors of a judgment debtor an unrecorded deed of the latter is a mere nullity. It has no existence as to them, and their rights are to be determined as if it had never been executed. Such creditors have the right to subject the land so conveyed to the payment of their judgments, and also to subject the improvements put on the land by the grantee, although they knew of the existence of the deed. Such creditors are not affected by knowledge of the conveyance and the fact that the alienee is making improvements.

10. JUDICIAL SALES—*Purchasers—Caveat Emptor.*—The rule of *caveat emptor* applies to judicial sales of land. The purchaser takes only such title as the parties to the suit had.

11. SUBROGATION—*Deeds—Liens After Acquired by Vendor.*—Where a
    vendor who has conveyed land in fee subsequently acquires liens
    on the land superior to the title conveyed by him, his vendee is
    entitled to be substituted to his rights in such liens to an amount
    not exceeding the contract price of the land so conveyed.

12. CONSTITUTIONAL LAW—*Section 88, Constitution 1902, Not Self-Exe-
    cuting.*—The provision of section 88 of the Constitution (1902),
    allowing an appeal in certain cases involving not less than $300,
    is not self-executing, and until the Legislature saw fit to confer
    it, this court could not exercise such jurisdiction.

13. ESTOPPEL—*After Acquired Title or Encumbrance.*—A vendor is not
    only estopped from setting up an after-acquired title to the land
    conveyed where he warranted the title generally, but he is also
    estopped from asserting such title, although there is no warranty,
    where the deed of conveyance recites or affirms, expressly or im-
    pliedly, that the grantor is seised of a particular estate, which
    the deed purports to convey, and upon the faith of which the sale
    is made. He is likewise estopped from acquiring an encumbrance
    existing upon the land at the time of his conveyance and assert-
    ing it against the land in the hands of his grantee, although
    he conveyed without warranty.

Appeal from a decree of the Circuit Court of Lee county in
a suit in chancery wherein the appellee, I. P. Kane, was the
complainant, and the appellants and others were the defendants.

*Amended and Affirmed.*

The opinion states the case.

*B. H. Sewell* and *Bullitt & Kelly,* for the appellants.

*R. T. Irvine,* for appellees.

BUCHANAN, J., delivered the opinion of the court.

This is a creditor's suit to subject the lands now owned by
James P. Barron, and certain lands formerly owned, or

claimed to have been owned, by him, to the payment of the judgments asserted in this case.

C. E. Flanary, one of the petitioners for appeal, assigns as error the action of the court in holding the "Hall tract" of land now owned by him liable to said judgments.

The ground of his contention is that Barron never had any such interest in the Hall land as could be subjected to his debts, or, if he did, that he, Flanary, was a *bona fide* purchaser for value without notice of such interest.

Flanary claims that about the 2d of December, 1891, Barron offered to sell the Cove Hill tract of land to J. A. G. Hyatt, at the price of $7,000, who declined at first to purchase it, but afterwards purposed to do so if Barron would accept in payment thereof certain property, among which was the Hall tract of land, valued at $2,000.00. Barron declined Hyatt's proposition, but afterwards returned to Hyatt's house and accepted it. On both occasions, when Barron was negotiating with Hyatt, he was accompanied by W. N. G. Slemp, from whom Barron was endeavoring to purchase the tract of land known as the Bruce tract. After the first interview between Barron and Hyatt, Slemp proposed to Barron that if he and Hyatt traded, he would take the Hall tract of land in part payment of the purchase price of the Bruce tract, and, with this understanding, Barron returned to Hyatt's and accepted his proposition, and also entered into a contract with Slemp for the purchase of the Bruce land. Barron executed a title bond to Hyatt by which he sold and agreed to convey to him the "Cove Hill" tract of land upon the payment of the consideration stated above. In that title bond it is provided that, "The said Hyatt is then to convey said Barron at the price of $2,000 the Hall tract of land." At the same time Barron executed a title bond, by which he sold the Hall tract of land to Slemp at the price of $2,000, and bound himself to make, or cause to be

made, a good title thereto. It was then agreed that deeds should
be prepared, one by which Barron and his mother should con-
vey the Cove Hill land to Hyatt, another by which Slemp and
wife should convey the Bruce land to Barron, and a third by
which Hyatt and wife should convey the Hall tract to Slemp.
Hyatt prepared all the deeds, and on or about the 11th of that
month they were executed. There was no tripartite agreement
between Hyatt, Barron and Slemp, as Mr. Flanary insists, by
which Slemp purchased the land from Hyatt, or Hyatt sold it
to Barron for Slemp. Slemp was no party to the agreement
between Barron and Hyatt; Hyatt was not a party to the agree-
ment between Barron and Slemp. Barron paid Hyatt the con-
sideration for the Hall land, and by his direction Hyatt con-
veyed it directly to Slemp. Barron was clearly the equitable
owner of the Hall tract of land, when by his direction it was
conveyed to Slemp. Mr. Flanary insists that, even if this be
so, he had no notice of it when he purchased and paid for the
Hall land, and that he is entitled to protection as a *bona fide*
purchaser for value and without notice. There is no evidence
that Mr. Flanary had actual notice that Barron was ever the
equitable owner of the Hall tract of land, but the recorded deed
from Hyatt to Slemp of December 11, 1891, contains a state-
ment which shows that Barron had an interest in the land.
That statement is as follows: "Witnesseth: That the parties
of the first part, for and in consideration of a deed executed
by James P. Barron and Louisa J. Barron for 200 acres of land
on Cove Hill, being lots Nos. 4, 5, 6 and 7, as partitioned
among B. F. Harber's heirs, to the parties of the first part, in
which the following conveyance was taken and is considered at
the price of two thousand dollars, the parties of the first part
doth, by these presents grant, bargain, sell, and convey unto
the said W. N. G. Slemp, at the instance of the said James P.
Barron, the following described tract or parcel of land, being

the lot deeded to Joannah Hall and her husband, John Hall, by the heirs of John W. Slemp, and by them deeded to said J. A. G. Hyatt, which tract of land is bounded as follows:" Then follows a description of the land by metes and bounds. This deed was a link in the chain of title under which Flanary claimed. It was his duty to examine it before purchasing. Means of knowledge, with the duty of using it, is equivalent to knowledge itself. *Jameson* v. *Rixey et als.,* 94 Va. 342, 26 S. E. 861, 64 Am. St. 726, and cases cited. *Fulkerson* v. *Taylor* (decided at this term of court), *ante* p. 314, 46 S. E. 309.

The second error assigned by C. E. Flanary is that the court erred when it decreed said land (Hall tract) to be sold, in not substituting or subrogating W. N. G. Slemp, to the sum of $2,000, which was the purchase price of said land, and which he had paid to Barron for Hyatt, and which Hyatt had paid for Barron towards the purchase price of the "Bruce" land. This assignment of error seems to be based upon the view that Slemp was a party to the agreement by which Barron purchased the Hall land from Hyatt. As we have before seen in discussing the first assignment of error, Slemp was no party to the agreement between Barron and Hyatt of December 2, 1891. He did not pay Hyatt $2,000, the purchase price of the Hall land, for Barron. Barron paid the purchase price thereof himself, and had the land conveyed directly to Slemp in part payment of the purchase price of the Bruce land.

The third and last assignment of error made by C. E. Flanary is, that if he is wrong in the first and second assignments of error, then he is advised the court erred in decreeing a sale of the entire Hall tract, but should only have decreed the sale of one-half thereof.

It is true that the mother of J. P. Barron united with him in his deed to Hyatt, conveying the Cove Hill land; and that said land was paid for in part by the Hall land, but there is

nothing in the record to show that she claimed any interest in the Hall land. Flanary in his answer does not raise this question. The commissioner in his report of liens and of the lands which are liable to their payment, reports that the Hall land is liable to the payment of all the liens in statement C, except as to certain named judgments. There was no exception to this report upon the ground that Mrs. Barron, the mother, owned any interest in the land. That question was not raised in the Circuit Court, and it is too late now to raise it here after the report of the commissioner, that the entire tract was liable to the judgments, was confirmed without exception on that ground.

The Virginia and Southwestern Railway Company, B. S. Clarke and Thomas Clyde assign as error the action of the court in holding that certain judgments against James P. Barron were liens upon the right of way of said railroad company, with the improvements thereon, through lots Nos. 21 and 22 of the W. N. G. Barron, Sr., land, lying in Lee county.

Whether or not the said strip of land is subject to the judgments for the payment of which the court decreed its sale, depends upon the construction of a deed executed by W. N. G. Barron, Sr., and wife to the Bristol Coal and Iron Narrow Gauge Railroad Company, on the 6th day of January, 1881. The deed describes the land conveyed as lying in Wise county. This description, it is contended by appellants, is a false description, and will be regarded as mere surplusage since the deed as a whole shows that a right of way was intended to be conveyed through Barron's whole farm, which was located in both Lee and Wise counties.

The motives of the parties in entering into the contract evidenced by the deed, as set out therein, and the description of the land affected by it are as follows:

"Whereas it is proposed by the Bristol Coal and Iron Narrow Gauge Railroad Company to lay out and construct and to

operate their road from Bristol-Goodson, in Washington county, through and across the lands of W. N. G. Barron and Anna Barron, of the counties of Wise and Lee, and State of Virginia, by way of Estillville and Spears Ferry, in Scott county, to a point at or near Big Stone Gap, in Wise county, Virginia, and to extend its line from any point on the same to Cumberland Gap, at any time when a majority of the stockholders shall deem it to the interest of said company to do so;

"And whereas for these purposes the said railroad company propose and desire to purchase of the said Baron and wife a belt of land fifty (50) feet in width along, and lying equally on either side of, the center line of their railway track, as the same may be finally located and established, with the privilege of any increase of such width at any point of the line as may be required to embrace deep cuts and fills, waste and borrowing pits be needed in the construction of the said railway through his said land;

"And whereas the said W. N. G. Barron and wife believe an appreciation in the value of his property will arise by the construction of the said road, and his estate so materially benefited by the same; now, therefore,

"This indenture, made this 6th day of January, 1881, between the said William N. G. Barron and Anna Barron, his wife, and the Bristol Coal and Iron Narrow Gauge Railroad Company,

"Witnesseth, That the said William N. G. Barron and Anna Barron, his wife, for and in consideration of one dollar ($1) to them in hand paid by the said Bristol Coal and Iron Narrow Gauge Railroad Company, the receipt of which is hereby acknowledged, have given, granted, bargained and sold, and by these presents do give, grant, bargain, sell and convey, in fee simple, and with general warranty, to the said Bristol Coal and Iron Narrow Gauge Railroad Company, all right, title, interest

and estate in and to a piece or lot of land, fifty (50) feet in
width, along the line of said company's railroad, as the same
may be finally located and established, measuring twenty-five
(25) feet at right angles from the centre line of the same on
either side, and extending for the entire length of the said rail-
road through the land and premises of the said William N. G.
Barron, the same lying in the county of Wise, and also such ad-
ditional width of land on each side of the said twenty-five (25)
feet as may be required to construct any deep cut or filling
found necessary in the grading of the said road, and such land
as may be necessary for waste and borrowing pits, and any
other purpose necessary, and also sufficient timber for cross-
ties, stringers, and for other purposes as the same may be needed
in the construction of the said railroad through his said land."

It is well settled that where the subject matter of a deed or
will is sufficiently and clearly ascertained, though there be
added particulars of description which are found to be false
or mistaken, effect will be given to the grant or devise, not-
withstanding, and these false or mistaken particulars of de-
scription will be rejected. In such a case the maxim, *"falsa
demonstratio non nocet cum de corpore constat"* applies.
*Wooten* v. *Redd,* 12 Gratt. 196, 208; *State Savings Bank, &c.*
v. *Stewart,* 93 Va. 447, 451, 25 S. E. 543. But in order to
bring a case within the influence of the principle invoked it
must appear that the other words of the grant or devise give
a clear, certain and unambiguous description of the subject
granted or devised, and that the particulars given are but words
of suggestion and affirmation superadded as further description
of a subject otherwise and sufficiently described. If, on the
other hand, such particulars are restrictive in their character,
if they serve to narrow and limit the extent of the subject
pointed out by the other words, they can never be rejected.
*Wooten* v. *Redd, supra,* 211; *State Sav. Bank* v. *Stewart, supra,*
451-2; 2 Minor's Inst. (4th Ed.), 1063-5.

Applying these principles of construction to the deed under consideration, it seems to us clear that the words of the deed describing the land conveyed as "lying in the county of Wise" cannot be treated or rejected as superfluous. The other parts of the deed are very general. The railroad had not then been located, and was not located until several years afterwards. Where it would run was not known. The grantor owned lands, as appears from the record, in the counties of Scott, Lee and Wise. Without the words describing the land as "lying in the county of Wise" the language of the deed was sufficiently broad to cover any tract of land of the grantor through which the railroad company or its successors might locate the road. The superadded words cannot be regarded as merely words descriptive of a subject already sufficiently described, but must be regarded as words of restriction. To reject them would be to construe the deed as conveying the Lee county land as well as the Wise county land. "If the words," as was said by Judge Lee in *Wooten v. Redd, supra,* "be restrictive, they can never be rejected, and it must be equally clear that they cannot be rejected if it be doubtful, as they stand, whether they are descriptive merely, or descriptive and restrictive. For, while there is such doubt it can never be said that the subject is clearly and sufficiently described. Nor in such a case will the law intend error or falsehood." To reject them would violate another well settled rule of construction, that every part of a writing must be so construed, if possible, as to take effect. By holding that the deed only conveyed a right of way through such part of the grantor's land as lies in Wise county, we give some effect to every part of the deed.

The railroad company, Clarke and Clyde assign as error the court's action in decreeing a sale of the said right of way, because the railroad company and those under whom it claims have had the actual adverse possession of the property for more than ten years prior to the commencement of this suit.

The statute of limitations invoked has no application to this case. This is clear from the language of that statute, section 2915 of the Code, and of the statute, section 3573, which limits the time within which judgment liens may be enforced in equity.

Section 2915 applies only to the right to make an entry or to bring an action to recover land. The suit of a judgment creditor to enforce his lien against land is not a suit to recover it. He has no right to the possession of the land. "The principle on which the statute of limitations is founded," as was said by Mr. Justice Miller, speaking for the Supreme Court of the United States, in *Pratt* v. *Pratt,* 96 U. S. 704, 24 L. Ed. 805, "is the laches of the plaintiff in neglecting to assert his right. If, having the right of entry or the right of action, he fails to exercise it within the reasonable time fixed by the statute, he shall be barred forever. But this necessarily presupposes the right of entry or the right to bring suit. There can be no laches in failing to bring an action when no right of action exists."

Section 3573 provides that no suit shall be brought to enforce the lien of a judgment, upon which the right to issue an execution or bring a *scire facias* or action is barred by sections 3577 and 3578. This implies, as has been frequently decided, that as long as the right to issue an execution, or bring a *scire facias* or action thereon exists, the lien may be enforced in equity, and this is so not only when the lands subject to the lien of the judgment are in the hands of the judgment debtor, but also in the hands of subsequent purchasers, whether they had actual notice or not, if the judgment was duly docketed. *Taylor* v. *Spindle,* 2 Gratt. 44; *Leake* v. *Ferguson,* 2 Gratt. 419; *Borst* v. *Nalle, &c.,* 28 Gratt. 423; *Hutchenson* v. *Grubbs,* 80 Va. 251; 4 Minor's Inst. (4th Ed.), 314, and cases cited.

They also claim that although the strip of land in question was subject to the judgment liens, as the court held, it erred in

decreeing a sale of the strip, because a railroad company is a *quasi* public corporation, and it is against public policy to sell a portion of a railroad track. This question was considered and passed upon in the case of *Fulkerson, &c.* v. *Taylor, &c., ante* p. 314, 46 S. E. 309, decided at this term of the court, and a contrary conclusion reached. It is unnecessary, therefore, to do more than to refer to the opinion in that case for the reasons which induced us to reach a conclusion adverse to the contention of the appellants.

They further assign as error the action of the court in holding that the improvements on the land, as well as the land itself, are liable to the lien of the judgments.

It is conceded, and properly so, that the provisions in chapter 124 and chapter 125 of the Code on the subject of improvements, have no application to a judgment creditor seeking to enforce his lien upon the land, upon which improvements have been made. The language of the statutes referred to, when considered as a whole, clearly shows that their provisions for allowing compensation for improvements only apply to actions of ejectment, or to cases in which a decree or judgment is rendered against a defendant for land. This was the construction placed upon them by President Moncure, if not by the whole court, in *Graeme* v. *Cullen,* 23 Gratt. 266-295; by Judge Staples in *Wood, &c.* v. *Krebbs,* 33 Gratt. 685-691, and by Judge Lewis in *Effinger* v. *Hall,* 81 Va. 94-107.

The contention of appellants is that where a purchaser without knowledge of a defect in his title to land, puts improvements thereon, a creditor who afterwards comes into a court of chancery to enforce his judgment will be required to allow for the improvements put upon the property, upon the principle that he who asks equity must do equity. The maxim that he who asks equity must do equity only applies, says Mr. Pomeroy (1 Pom. Eq. sec. 386), where a party is appealing as *actor* to a court of equity in order to obtain some equitable relief.

In *Wood* v. *Krebbs, supra,* at page 689, Judge Staples says: "It seems to be well settled that where the legal title is in one person, who has made improvements in good faith, and the equitable title is in another, who is compelled to resort to a court of equity in support of his equitable claim, that court, acting upon the principle that he who seeks equity must himself do what is equitable, will require as a condition of such relief that the true owner shall make compensation for such improvements." See *Graeme* v. *Cullen, supra,* at pages 296 to 301; *Effinger* v. *Hall, supra,* 103, 104.

A judgment creditor who comes into a court of equity to enforce his lien upon land is not asserting an equitable right or seeking equitable relief. His judgment is a *legal lien.*

In *Gordon, &c.,* v. *Rixey, &c.,* 76 Va., at 704, Judge Staples, speaking for the court, said: "In *Borst* v. *Nalle,* 28 Gratt. 430, and in *Price* v. *Thrash,* 30 Gratt. 515, it was held that the lien of a judgment is an express absolute statutory lien on the debtor's real estate, and the right to resort to the courts to enforce it is a legal right, without terms and conditions imposed." *Leake* v. *Ferguson,* 2 Gratt. 419; 2 Minor's Inst. 314-15.

The right of the judgment creditors to subject the strip of land held by the railroad company to the lien of their judgments recovered after the judgment debtor had parted with his interest therein results from the failure of his vendee to comply with the registry acts, which provide that every contract in writing made for the conveyance or sale of real estate for a term of more than five years, and any deed conveying any such estate or term shall be void as to subsequent purchasers for valuable consideration without notice, and creditors, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be. Code, sections 2463 and 2465. *March, Price & Co.* v. *Chambers,* 30 Gratt. 299, 303-304.

As against the creditors of the judgment debtor, such writing is a mere nullity. As to them, it has no existence in contemplation of law, and their rights must be determined as if it had never been executed. *Bankers, &c.* v. *Blair,* 99 Va. 606, 610, 39 S. E. 231, 86 Am. St. 914. The strip of land in question must, therefore, as to such appellee creditors, be treated as if James P. Barron were still the owner of it. If he be still the owner of the land in contemplation of law, he is owner of the improvements also, for it is a general rule of the common law, subject to some exceptions, as in the case of fixtures, that everything annexed to the freehold becomes a part thereof. *Graeme* v. *Cullen, supra,* p. 287; *Effinger* v. *Hall, supra,* p. 103.

If the creditors have the right by virtue of the registry laws to subject the land, of which the improvements are a part to the payment of their judgments, how can a court of equity in enforcing their legal rights compel the creditors to account to the railroad company for the value of the improvements, by charging the same upon the land as a prior lien to their judgments? Counsel have not cited us to a case, nor have we found one in our own researches, which in the absence of statute holds that a creditor in enforcing the lien of his judgment must account for the improvements placed upon the land by an alienee who acquired his interest by a writing which is void under the registry laws.

As to the suggestion made by the appellants that they are protected because they derive title through a judicial sale, it is sufficient to say that the rule of *caveat emptor* applies to judicial sales, and that they only acquired such title as the parties had who were before the court. The judgment creditors are not shown to have been parties to that suit, and their rights are not impaired by said sale. *March, Price & Co.* v. *Chambers, supra,* p. 305.

As to the contention that the judgment creditors were guilty

of laches in asserting their claims, it is only necessary to say that a judgment creditor's right to enforce his lien under the registry acts is not affected by his knowledge of the fact that the property has been aliened and that the alienee is making improvements thereon. When he dockets his judgment as provided by statute, he has done all he is bound to do, and parties dealing with the property do so at their peril and in complete subjection to the lien. *Graeme* v. *Cullen, supra,* 266, 307; *Wood* v. *Krebbs,* 33 Gratt. 685, 692.

As to the assignment of errors by the appellant, John Gilly:

He insists that the court erred in holding that his 34 1-2 acre tract of land was liable to the lien of the judgments, for whose payments it was decreed to be sold. First, because the evidence does not show that James P. Barron ever had any interest in that land, and, second, because if Barron ever owned it the record does not show that appellant had actual notice of it.

The commissioner found upon the evidence, which was conflicting, that the 34 1-2 acre parcel of land was assigned in the partition of the real estate of W. N. G. Barron, Sr., to the heirs of Joseph Barron, one of whom was the wife of W. N. G. Slemp; that Slemp became the purchaser and had conveyed to him all the land except the interest of his wife, who died intestate, leaving five children, all infants, for all of whom their father was appointed guardian; that some time prior to August, 1888, Slemp sold the land to the mother of James P. Barron, and executed to her a title bond, which was never recorded; that Slemp, as guardian of his children, by suit, had the sale made by him confirmed by the Circuit Court for Lee county, and a commissioner appointed to convey the interest of the said children in the land to Barron and his mother. The conveyance was made September 30, 1892, and recorded June 3, 1895. That on September 14, 1888, Slemp and wife and

James P. Barron executed a deed of trust upon the land to se-
cure to J. M. Flanary the payment of the sum of $1,000, which
was admitted to record October 2, 1888; that on June 14, 1890,
J. P. Barron resold his interest in the land to Slemp, by agree-
ment, which was not properly recorded; that by deed dated De-
cember 1, 1891, Slemp and wife conveyed the land to the appel-
lant Gilly; that James P. Barron's mother either purchased the
land for her son, or he took the purchase off her hands and paid
all the purchase money; that the appellant, Gilly, from the
facts and circumstances proved, must have known of Barron's
former interest in the land when he purchased it from Slemp.
The court approved the commissioner's finding upon this ques-
tion, confirmed his report, and held that the land was subject
to certain judgments against James P. Barron. In this there
was no error, as the commissioner's conclusion is fully sus-
tained by the evidence.

Judgments numbered four, six, seven and eight, held to be
liens upon the 34 1-2 acre tract of land, had been assigned to
W. N. G. Slemp, the grantor of Gilly, who had conveyed the
land with covenants of general warranty. The court held that
so much of the proceeds of sale of that tract of land as was ap-
plicable to the payment of said judgments four, six, seven and
eight, should be paid to Gilly. Gilly insists that the court
should have gone further and decreed that so much of the pro-
ceeds of the Hall land, which was liable before the 34 1-2 acre
tract, as was applicable to the payment of the judgments four,
six, seven and eight, should be paid to him (Gilly) instead of
to C. E. Flanary, the purchaser of the Hall tract from W. N. G.
Slemp, who had also warranted generally the title to the Hall
land. This contention cannot be sustained. Gilly has no right
to any part of the judgments assigned Slemp, except to the
extent that the proceeds of the sale of his land are applicable
to their payment. There was no error in the court's decree,

holding that Flanary and Gilly should each receive the proceeds arising from the sales of their respective lands so far as applicable to the payment of the judgments assigned Slemp, except that the sums so received should not exceed the contract price when they respectively purchased from Slemp.

The appellees assign as cross error, under Rule IX., the action of the court in not thus limiting the amount to be paid to C. E. Flanary out of the proceeds of the Hall land, to John Gilly out of the proceeds of the 34 1-2 acre tract, and out of the proceeds of the 8 acre tract, known as lot No. 10, and also to Malissa E. Slemp out of the proceeds of the 4 acre tract, known as lot No. 14. This cross assignment of error must be sustained, and the decree corrected in that respect.

John Gilly also assigns as error the action of the court in directing the sale of the Big Stone Gap lot, purchased by him, and in refusing to allow him the benefit of the improvements thereon.

The judgments for whose payment the court directed this lot to be sold were properly docketed before Gilly purchased it and made his improvements. His contention is without the least merit, as he bought the lot and made his improvements with notice of the liens thereon.

Sallie R. Flanary and Robert W. Flanary assign as error the refusal of the court to allow them the sum of $133.33 and interest, the amount paid by them for James P. Barron on the purchase price of the Big Stone Gap lot. This assignment of error is based upon a mistake of fact. The court did allow that debt as a prior lien upon Barron's interest in the lot, and the sum of $150 which the court decreed to be paid Mrs. Flanary is the sum named in the assignment of error, with its interest. This is clearly shown by the deposition of R. W. Flanary, and the exhibits fil·· ·herewith.

They also assign as error the refusal of the court to allow compensation for the improvements made upon the lot by them.

W. T. Goodloe conveyed the lot to R. W. Flanary and James P. Barron February 15, 1890, by deed, which was recorded May 17, 1890. Barron conveyed his undivided one-half interest in the lot to E. F. Taylor, by deed dated September 5, 1890, and recorded June 12, 1893. Taylor and wife conveyed their interest to R. W. Flanary by deed dated July 1, 1891. Flanary put the improvements on the lot in the years 1893-'4, and he and his wife conveyed the lot to Taylor by deed dated November 12, 1895, who, with his wife, conveyed the lot to Mrs. Sallie R. Flanary, wife of R. W. Flanary, on the day following. Two of the judgments for whose payment the Barron interest in said lot was directed to be sold, were obtained at the September term, 1891, and the other at the September term, 1892, of the Circuit Court for Wise county, and all docketed before the deed from Barron to Taylor was recorded. In the former part of this opinion it has been held that such a purchaser is not entitled to compensation for improvements as against such judgment creditors. But the appellants, Flanary and wife, insist that even if this be so, they, or rather that the wife, as tenant in common with Barron, had the right to put improvements upon the lot, and in a partition thereof is entitled to have assigned her that portion of the lot upon which the improvements are, or in case of sale to be allowed the value of the improvements out of the proceeds.

This contention is also based upon a mistake of fact. At the time the improvements were placed upon the land by R. W. Flanary, he, as between himself and Barron, was the sole owner of the lot. The half interest acquired from Barron through Taylor was subject, of course, to the lien of said judgments. No tenancy in common has existed in the land since July 1, 1891, when Taylor conveyed the Barron interest to R. W. Flanary.

R. E. Bratton assigns as error the disallowance of his judg-

ment as a lien, because the docketing of his judgment was not indexed as required by law.

As the amount involved is less than $500, this court had no jurisdiction at the time the case was submitted for decision. Section 88 of the Constitution, which provides that this court shall not have jurisdiction in civil cases where the matter in controversy, exclusive of costs and interest accrued since the judgment in the court below, is of less value than three hundred dollars, except in certain classes of cases named, does not *proprio vigore* confer jurisdiction upon this court. Under the Constitution, section 88, this court had the capacity to receive jurisdiction in cases involving not less than three hundred dollars, but until the Legislature saw fit to confer it, this court could not exercise such jurisdiction. *Prison Association, &c.* v. *Ashby,* 93 Va. 667, 671, and cases cited.

The decree appealed from must be affirmed after amending it so as to provide that no greater amount shall be paid to C. E. Flanary, John Gilly and Malissa E. Slemp, respectively, on account of the judgments assigned to W. N. G. Slemp than the purchase price which they respectively paid Slemp for the land purchased by each.

Upon a petition to rehear.

Buchanan, J. :

John Gilly, one of the appellants in this cause, has filed his petition for rehearing of the decree entered by this court at its January term, 1904, so far as it affects his right to payment out of the Slemp judgments numbered 4, 6, 7 and 8. He attacks the correctness of that decree upon two grounds: "First, because W. N. G. Slemp conveyed to Gilly long before he conveyed to Slemp and Flanary, and, second, because he conveyed to Gilly with general warranty, *but did not convey to Flanary and Slemp with general warranty.*"

The former of these grounds was fully argued when the case was submitted, and carefully considered by the court before making the decree complained of. Upon a reconsideration of that question we see no reason to change the conclusion then reached.

The second ground relied on was not urged when the case was argued, but the deed to Flanary and Slemp was treated by all parties as a conveyance with a covenant of general warranty, and this court, in passing upon the question involved, so treated it. It now appears that there is no such covenant in the deed. Although this is true, it does not necessarily follow that Flanary is not entitled to the relief granted him by the Circuit Court, as modified by the decree which it is sought to have reheard.

A vendor is not only estopped from setting up an after-acquired title to the land conveyed where he warranted the title generally, but he is also estopped from asserting such title, although there is no warranty, where the deed of conveyance recites or affirms, expressly or impliedly, that the grantor is seised of a particular estate which the deed purports to convey, and upon the faith of which the sale was made. *Reynolds* v. *Cook,* 87 Va. 817, 3 S. E. 710, 5 Am. St. 317; *Nye* v. *Lovitt,* 92 Va. 710, 24 S. E. 345, and authorities cited. *Van Rensselaer* v. *Kearney,* 11 How. 297, 13 L. Ed. 703; Rawle on Covenants for Title (5th Ed.), ss. 245, 247. If the grantor is estopped, under such a conveyance, from setting up an after-acquired title, he would be equally estopped from acquiring an encumbrance existing upon the land at the time of his conveyance, and asserting it against the land in the hands of his grantee.

The language of the deed from W. N. G. Slemp and wife, under which Flanary holds, shows clearly that it was not intended to pass a limited or qualified interest in the land, but to convey the land itself. They declare that they "give, grant,

bargain and sell and convey  .  .  .  two certain tracts or parcels of land," describing them, and referring to deeds of record under which they had acquired title to the land.  The deed bears upon its face evidence that the grantors intended to convey, and the grantee expected to become invested with, an estate in fee simple in the land.  *Reynolds* v. *Cook, supra; Van Rensselaer* v. *Kearney, supra;* see *Wynn* v. *Harman,* 5 Gratt. 164.

This being so, we are of opinion that Slemp could not acquire said judgments which were liens upon the land, and assert them against it to the prejudice of Flanary.

The petition to rehear must, therefore, be denied.

*Amended and Affirmed.*