# Richmond

## WALLIS KIAN v. VASILEOIS N. KEFALOGIANNIS.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*J. Toomer Garrow*, for the plaintiff in error.

*Archer L. Jones*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This was an action of ejectment instituted by Vasileois N. Kefalogiannis in the Circuit Court for the city of Hopewell against Wallis Kian. All questions of law and fact were submitted to the court, without the intervention of a jury, and judgment rendered in favor of the plaintiff. Thereupon the defendant asked leave, and was permitted, to file a petition praying compensation for permanent improvements made on the premises by him and those under whom he claimed. Issue was joined on this petition. Again a jury was waived and the matter submitted to the court, which held that no compensation should be allowed for improvements and dismissed the petition. From the above orders the defendant is here complaining.

The defendant below, the plaintiff in error here, assigns three errors. Assignments one and two deal with the ruling of the court on the trial of the issue joined by the pleadings in the action of ejectment. Final judgment on this issue was entered on December 12, 1928, and in the same order execution on the judgment was suspended and the defendant was given two weeks in which to file his petition setting forth his claim for compensation. Within the specified time the petition was filed, but final judgment denying compensation and dismissing the petition was not entered until February 11, 1930.

██ While the two actions are connected, they are separate and distinct proceedings. Neither the filing of the petition asking for compensation for improvements nor the suspension of execution of the judgment had the effect of extending the six months' limit within which a writ of error to the judgment in the action of ejectment might be sought. Hence we cannot consider these two assignments.

The third and last assignment of error is to the action of the court in refusing to allow compensation for improvements.

The pertinent facts are, that the plaintiff in 1916, under a deed duly recorded, was the owner of a vacant lot in the city of Hopewell. In January, 1919, the Commonwealth became the purchaser of this lot for non-payment of the 1917 taxes. M. D. Aldrich filed an application to purchase the lot from the Commonwealth and on August 17, 1921, received a deed therefor from the clerk of the corporation court. By deed dated September 19, 1922, Aldrich conveyed the lot to Peter Petroff, who erected a one-story frame building thereon.

Petroff died and a suit was brought in the Corporation Court of the city of Hopewell to settle his estate. J. B. Haywood, administrator, acting under a decree of the court in that cause, sold and by deed dated January 23, 1926, conveyed the lot, with improvements, to Wallis Kian. All of these deeds were duly recorded.

Wallis Kian, subsequent to his purchase, made other improvements on the lot. In October, 1928, the plaintiff instituted an action of ejectment, in which action the court held that the tax deed to M. D. Aldrich was void, and on December 12, 1928, entered the judgment mentioned above.

The court does not state the specific ground upon which it held the tax deed void. The plaintiff in his reply brief recites numerous irregularities appearing on the public records in the clerk's office and not appearing on the face

of the deed, and many omissions from the deed of circumstances appearing in the clerk's office which render it void.

Without attempting to enumerate all of the defects claimed, it is apparent from the deed itself that it contains no reference to the report of the city treasurer to the corporation court of the sale of this lot to the Commonwealth, or of the confirmation of such sale by the court. "Both of these things were required and both are circumstances which, if they occurred, appear in the clerk's office, and they are important particulars relating to the sale." *Roller* v. *Armentrout,* 118 Va. 173, 86 S. E. 906, 907. The omission of these recitals from a tax deed is fatal to its validity. *Coles' Heirs* v. *Jamerson,* 112 Va. 311, 71 S. E. 618, 50 L. R. A. (N. S.) 407; *Zimmerman Co.* v. *Dey,* 121 Va. 709, 93 S. E. 597.

The defect in the defendant's title was a matter of record, and notice of such defect was imputable to him. Such being the fact, is the defendant entitled to any allowance for permanent improvements made on the premises while he or his predecessor in title was in possession and before either had actual notice of the plaintiff's claim?

He was not entitled to any allowance under the general rule of the common law. The defendant claims that he comes within the provision of Code, section 5491. There has been no change in this statute since the adoption of the Code of 1849. (See page 563.) Under its terms this court has repeatedly held that a person with notice, actual or constructive, of a defect in his title is not entitled, upon being dispossessed by the rightful owner, to recover compensation for permanent improvements made on the premises. Means of notice, with the duty of using them, is equivalent to actual notice. *Smith* v. *Woodward (Story* v. *Woodward),* 122 Va. 356, 94 S. E. 916, 922; *McDonald* v. *Rothgeb,* 112 Va. 749, 72 S. E. 692, 693, Ann. Cas. 1916B, 63; *Nixdorf* v. *Blount,* 111 Va. 127, 68 S. E. 258, 259;

*Fulkerson's Adm'x* v. *Taylor*, 102 Va. 314, 46 S. E. 309; *Effinger* v. *Hall*, 81 Va. 94.

The revisors of the Code of 1887, cited the case of *Effinger* v. *Hall, supra,* under section 2760, now 5491, wherein is found the following significant language:

"It is not sufficient to say that by their improvements the property has been enhanced in value. The appellees cannot be charged with any part of the cost of those improvements, if the same were made by the appellants, or those under whom they claim, with notice of the appellees' claim; or, in other words, with notice of the infirmity in their own titles * * *. And 'no principle is better established than that a purchaser must look to every part of the title which is essential to its validity.' *Brush* v. *Ware*, 15 Pet. 93 [10 L. Ed. 672].

\* \* \* \* \* \* \* \* \* \* \*

"In *Burwell* v. *Fauber*, 21 Gratt. (62 Va.) 446, it was held that a purchaser 'is bound not only by actual but also by *constructive* notice, which is the same in effect as actual notice,' and that 'he has no right to shut his eyes or his ears to the inlet of information, and then say he is a *bona fide* purchaser without notice.'

"The language of Mr. Justice Strong, in *Cordova* v. *Hood*, 17 Wall. 1 [21 L. Ed. 587], so often quoted with approbation by this court, is peculiarly appropriate to the present case. He said: 'Whenever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge itself.' See, also, *Long* v. *Weller*, 29 Gratt. (70 Va.) 347; *Wood* v. *Krebbs*, 30 Gratt. (71 Va.) 708; *Coles* v. *Withers*, 33 Gratt. (74 Va.) 186; *Lamar's Ex'r* v. *Hale*, 79 Va. 147; *Hurn* v. *Keller*, 79 Va. 415; *Wood* v. *Carpenter*, 101 U. S. 135 [25 L. Ed. 807]."

Judge Whittle, speaking for this court in the case of *McDonald* v. *Rothgeb, supra,* said:

"With respect to the matter of allowance for improvements, we are of opinion that the question involved is ruled by the conclusion reached by this court in the analogous case of *Nixdorf* v. *Blount*, 111 Va. 127, 68 S. E. 258, and cases cited in the opinion.

"It seems to us that to hold that a purchaser can close his eyes to his record title and recover for improvements, on the theory that 'there was reason to believe the title good' (Va. Code 1904, section 2763), would be to set a premium on negligence and nullify our registry statutes.

"It was said in *Bodkin* v. *Arnold*, 48 W. Va. 108, 109, 35 S. E. 980, 981, that 'belief, to be *bona fide*, must be founded in ignorance of facts, and not ignorance of law.' And ignorance of fact cannot be predicated of a case where the purchaser is affected with constructive notice.

"These views are decisive of the case * * *."

And again, in *Nixdorf* v. *Blount, supra*, the same judge in referring to the case of *Fulkerson's Adm'x* v. *Taylor*, said: "We held that 'a purchaser cannot claim that he put improvements upon land in good faith, believing that he had good title, when the records disclose a defective title.' "

The cases so construing the statute are cited by the revisors of the 1919 Code, and in the authorized annotations to this section (5491) the following pertinent statement is made:

"A person with notice, actual or constructive, of infirmity in his title, cannot, upon recovery of such lands by rightful owners, obtain a compensation for improvements made thereon. Means of notice, with duty of using them, is equivalent to actual notice, *Effinger* v. *Hall*, 81 Va. 94." (Code 1919, page 2394.)

Finally, Judge Burks, who prior to his becoming a member of this court was one of the revisors of the 1919 Code, in January, 1918, before this Code was adopted, speaking for the court in the case of *Smith* v. *Woodward, supra*, said:

"The statute allowing recovery for improvements restricts it to one 'holding the premises under a title believed by him * * * to be good'. Code, section 2760 (now 5491). This court has held that this section has no application to one who is not a *bona fide* purchaser, and that a person with notice, actual or constructive, of infirmity in his title cannot recover for improvements."

It thus appears that the erudite revisors of the Code of 1919, with full knowledge of the construction this court had repeatedly placed on the language of this statute, recommended no change therein, and that the legislature during a period of more than eighty years has made no amendments thereto.

Since the construction of the statute as set forth in the authorities cited has become the settled law of this State, not only settled but long settled, any discussion of the conclusions reached by other courts in other States in the consideration of like, or similar, statutes would be unfruitful.

For the reasons stated, the judgment of the Circuit Court of the city of Hopewell is affirmed.

*Affirmed.*

EPES, J., dissenting.

Kian, who is seeking to recover for improvements in this proceeding, has, so far as the record shows, had only constructive notice of the defects in his title. Constructive notice as here used means such notice as is given under the registry statutes by the mere recordation of a deed, or by the existence of a public record, or by the recitals in a remote deed in the defendant's chain of title of which recitals he has no knowledge or actual notice. As herein used, it does not include notice of a fact imputed to the defendant from other facts, of which he has knowledge or actual notice, which would put an ordinarily prudent man upon inquiry.

My understanding of the decision of the court in this case is this: Under section 5491 and section 5494,[1] Code Va. 1919 (sections 2760, 2763, Code 1887; chapter 136, sections 1, 4, Code 1849), if a defendant against whom a decree or judgment has been rendered for the recovery of land had *constructive* notice of the infirmity in his title, he cannot recover for improvements placed thereon by him, although at the time he made the improvements he had no knowledge or actual notice that his title was defective, and honestly believed, upon reasonable grounds, that his title was good. In this view I do not concur.

I find only four States which are anywhere cited as holding this view: New Hampshire, Texas, Virginia and West Virginia; and it is doubtful, to say the least, whether the cases in New Hampshire and Texas sustain such a rule. In only one of the West Virginia cases to which my attention has been called (*Dawson* v. *Grow*, 29 W. Va. 333, 1 S. E. 564), was the pronouncement of such a rule necessary to the conclusion reached. And in Virginia none of the cases prior to *Nixdorf* v. *Blount*, 111 Va. 127, 68 S. E. 258, so

---

[1] See, also, section 5483 and section 5484, Code 1919, which are the same as sections 2753, 2754, Code 1887, and sections 32, 33, chapter 135, Code 1849.

But section 5491 and section 5494 are the material sections. These sections, which are in the same language as when they were first enacted as section 1 and section 4, chapter 136, Code 1849, read:

"Section 5491. Any defendant against whom a decree or judgment shall be rendered for land, where no assessment of damages has been made under the preceding chapter, may, at any time before the execution of this decree of judgment, present a petition to the court rendering such decree or judgment stating that he, or those under whom he claims while holding the premises under a title believed by him or them to be good, have made permanent improvements thereon, and praying that he may be allowed for the same over and above the value of the use and occupation of such land; and thereupon the court may, if satisfied of the probable truth of the allegation, suspend the execution of the judgment or decree, and impanel a jury to assess the damages of the plaintiff, and the allowances to the defendant for such improvements."

"Section 5494. If the jury shall be satisfied that the defendant, or those under whom he claims, made, on the premises, at a time when there was reason to believe the title good under which he or they were holding the said premises, permanent and valuable improvements, they shall estimate in his favor the value of such improvements as were so made before notice in writing of the title under which the plaintiff claims, not exceeding the amount actually expended in making them, and not exceeding the amount to which the value of the premises is actually increased thereby at the time of the assessment."

hold; and it is difficult to reconcile this broad holding with the view taken by this court in some of the earlier cases as to the rule in equity prior to the enactment of this statute, or with some of those decided since the enactment of the statute. *Ruffners* v. *Lewis' Ex'rs*, 7 Leigh (34 Va.) 720, 743, 30 Am. Dec. 513; *Cullop* v. *Leonard*, 97 Va. 256, 33 S. E. 611; *Effinger's Ex'x* v. *Kenney*, 92 Va. 245, 23 S. E. 742.

The overwhelming weight of authority (Arkansas, Georgia, Indiana, Iowa, Kentucky, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Oregon, Tennessee, Vermont and Wisconsin), and all the better reasoned opinions hold to the contrary. They hold that under such a statute constructive notice alone is not sufficient to bar recovery for improvements by a defendant who honestly believed, upon reasonable grounds, that his title was good.

Ordinarily under this rule, the mere fact that had the defendant examined the records he would have discovered the defect in his title will not bar his recovery for improvements. But this is not true where there were special facts or circumstances known to him which ought to have put a reasonably prudent man on guard that it would be gross negligence for him not to examine the records or make inquiry as to the title before making the improvements. In such cases, if an examination of the records or proper inquiry would have disclosed the defect in title, it cannot be said that the defendant had reasonable grounds for his belief that his title was good, or acted in good faith in making the improvements.

This, in my judgment, is the correct rule under the Virginia statute on this subject.

There are three, and only three, reported Virginia cases in which the doctrine applied by the court in this case has been announced: *Nixdorf* v. *Blount*, 111 Va. 127, 68 S. E. 258; *McDonald* v. *Rothgeb*, 112 Va. 749, 72 S. E. 692, Ann.

Cas. 1916B, 63; and *Smith* v. *Woodward*, 122 Va. 356, 94 S. E. 916. My view is that in so far as these three cases announce the broad general rule that constructive notice alone is sufficient to bar recovery under the statute for improvements, they should be frankly overruled. If this is not done, then I think that any extension of the doctrine applied in these cases should be disapproved, and their use as precedent rigidly restricted to the same state of facts upon which the cases were decided.

None of the other cases decided by this court, or the Supreme Court of the United States, cited on this point by the court hold or say, even by way of dictum, that constructive notice is sufficient to bar a recovery for improvements under what is now sections 5491–5494 of the Code, or any other similar statute on the subject. What is said in those cases relates entirely to the rule in chancery where there is no applicable statutory provision on the subject of recovery for improvements, but there are registry statutes similar to the Virginia statutes on that subject. This the court plainly states in its opinion in *Effinger* v. *Hall*, 81 Va. 94.

*Bodkin* v. *Arnold*, 48 W. Va. 108, 35 S. E. 980, which was cited in *McDonald* v. *Rothgeb, supra,* and seems to be relied upon by the court in the instant case, is not a case in point. In this case the defendant not only had actual notice, but knowledge, of the facts which rendered his title bad. His belief that his title was good was based upon a mistaken view that these facts did not render his title bad. (See, also, *Bodkin* v. *Arnold*, 45 W. Va. 90, 30 S. E. 154.)

The doctrine followed by the court in its opinion in the instant case was first pronounced as a dictum in *Nixdorf* v. *Blount, supra,* apparently without critical examination of the subject. Indeed, there was no reason for a critical examination of the subject. As is pointed out in the opinion, this was a chancery cause brought to enforce a judgment

lien, not to recover land, and the statute in terms limits its application to a "defendant against whom a decree or judgment shall be rendered for land." Judge Whittle in his opinion in this case says: "In *Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312 [681], it was said: 'The provisions of chapters 124 and 125 of the Code (*i. e.* sections 5483–5485, and sections 5491–5494, Code 1919) * * * on the subject of improvements have no application to a judgment creditor seeking to enforce his lien upon the land upon which the improvements have been made.' "

This dictum was followed and applied by the court in *McDonald* v. *Rothgeb*, *supra*, and *Smith* v. *Woodward*, *supra*, apparently merely upon precedent, without critical analysis of the rule upon reason and principle; and in the instant case the court seems contented to follow the precedent of these three cases, with little discussion of the soundness of the rule upon reason and principle. In this connection it may be here mentioned that in *Smith* v. *Woodward*, *supra*, there were other bases for the decision made other than the broad rule adopted by the court in the instant case. The opinion in the instant case seems to me to assume without discussion the same false premise which was assumed without discussion in the three earlier cases, *i. e.*, the rule under the statute is, and must be, the same as the rule which has been held by courts of chancery to pertain in absence of such a statute.

Another assumption made by the court in its opinion is that, "ignorance of fact cannot be predicated of a case where the purchaser is affected with constructive notice." This, I think, is not true. Prettily turned phrases are dangerous, because they are often inaccurate, just as is this one. Constructive notice alone of a fact cannot prevent a person from being ignorant of that fact, or make his ignorance of that fact ignorance of law, and not of fact. What I suppose is meant is that constructive notice may

be, and often is, given by some positive rule of the common or statute law the same consequence as ignorance of fact, but in application this does not lead to the same results as the doctrine that ignorance of fact cannot be predicated of a case where the purchaser is affected with constructive notice.

For all practical purposes the doctrine announced in the three cases mentioned, and adopted by the court in this case, is a reversion, consciously or unconsciously, to the old common-law rule which allowed recovery for improvements in no case in which there was a recovery of the land. A rule which finds its origin, and the persistence of its influence, in a point of view which gives undue exhaltation to the ownership of land, and is more in accord with feudal tenures and estates tail than with modern thought and conditions. Courts of chancery have for an hundred years recognized the injustice of the common-law rule and been endeavoring to apply some more just and equitable rule, but have found themselves largely impotent to accomplish any very material results, without legislative enactment on the subject. The bar to effective amelioration has been the registry laws, which a court of chancery has no inherent power to modify. The reason that the assistance of the legislature has been required is that the legislature labors under no such disability, and may make such provisions in conflict with or in modification of the registry laws as it may deem proper.

The Virginia court has held in *Wood's Ex'r* v. *Krebbs*, 33 Gratt. (74 Va.) 685, and other cases, that in equity constructive notice alone is not sufficient to bar a recovery for improvements up to an amount equal to the rent claimed by the plaintiff who has recovered the land. It is difficult on principle to reconcile a holding that constructive notice will not bar a partial recovery with a holding that constructive notice will bar a full recovery. Whatever may

have been said in these cases as to the basis for the difference, the real basis upon which the court rests the making of a difference would seem to be a holding that in case of the partial recovery the court of chancery is not bound hand and foot by the registry statutes, while in a case where full recovery is sought it is so bound. But is this logical?

The statute here under consideration was clearly enacted as a remedial statute; and in view of its purpose, history and language there is no reasonable ground for holding that it was not intended to modify the effect of the registry statutes. But the narrow and highly technical doctrine promulgated by the court in the Virginia cases under consideration holds that the registry statutes are not modified by the statute relating to the recovery of improvements. It so restricts the application of this remedial statute as, in effect, to nullify the statute; gives to its language an unnatural interpretation, which is not required by its terms, or by any other Virginia statute, and does not harmonize with its purposes or history; and, in effect, under the guise of construction enters upon the field of legislation and writes into the statute language which is not merely not contained in the statute, but is contradictory of its language.

Under the doctrine announced by the court in these cases, it requires great ingenuity to conceive of a case to which the statute relating to recovery of improvements can apply. For all practical purposes, there are no such cases and the statute is a useless enactment. If any doubt this assertion, they may readily prove it by trying to conceive of a case to which it can apply. I think I have been able to conjure up a few (very few) hypothetical cases to which it might apply, but in each instance the case presents a state of facts the occurrence of which is highly improbable. In my examination I have found no reported case from Virginia or any of the other States in which there has been a recovery

of land, either in a suit in equity or an action of eject-
ment, in which under the rule adopted by the court in this
case this statute would authorize a recovery for improve-
ments. There may be some, but I have not found them.
I think I have found and examined all the reported Virginia
cases from 1776 to this time which involve the question of
recovery for improvements; and in none of them could a
recovery have been had under this statute, if the rule applied
by the court in this case be the correct rule.

There are, of course, cases such as *Southall* v. *McKeand,*
1 Wash. (1 Va.) 336, and *Walker* v. *Beauchler,* 27 Gratt.
(68 Va.) 511, where the plaintiff recovering land, was held
in equity to be estopped by his own acts from asserting that
the defendant is not entitled to recover for improvements;
but that recovery for improvements in such cases is not by
virtue of or under the statute.

Whichever rule is adopted will, perhaps, work a hardship
in some cases. But after a review of a large number of
reported cases involving recovery for improvements, I am
convinced that the rule adopted by the court in this case
will work injustice or hardship in many more cases than
the rule adopted by the great majority of the courts. *Mc-
Donald* v. *Rothgeb, supra,* and the instant case are good
examples of the injustice done by the rule adopted by the
court. In both cases the inference is clear that the land
involved was of no peculiar value to the plaintiff recovering,
that it only meant to him a matter of dollars and cents,
and that the value added by the improvements made by
the defendant was much in excess of the value of the land
without improvements. In the instant case a lot of land
of so little value that the owner would not pay taxes on it,
has been permitted to draw with it $3,500.00 of improve-
ments placed there by a man whose savings of a lifetime it
may represent.

The court in its opinion lays much stress upon the sanc-

tity of precedent; and seems to take the view that the three cases followed by it may not now be overruled, because since they were decided the Code of 1919 has been enacted and in it the statutes here under consideration were incorporated without change in their language. It is also stressed as a reason for not overruling these three cases that Judge Burks, who wrote the opinion in *Smith* v. *Woodward, supra,* served as one of the revisors of this Code prior to his appointment as a judge of this court.

The rules of precedent and *stare decisis* are forceful rules resting upon the sound principle that there should be stability in the law. But the observation made by Judge Burks in *Whitaker* v. *Lane,* 128 Va. 317, 325, 104 S. E. 252, 255, 11 A. L. R. 1157, seem to me to be very pertinent here. In that case, speaking for the court, he says:

"While great consideration should be given to precedent, especially to one of long duration and general acceptance, it cannot be that a rule merely established by precedent is infallible. This would stay all progress and forbid all development. If the rule established by precedent is highly technical, and finds origin in reasons which no longer exist, and the courts have from time to time found it necessary to make exceptions thereto to meet the needs and methods of doing business in modern times, it would seem that the court should adapt their procedure to the age in which we live, and cease to follow a precedent for which they have always to apologize, and declare that it is highly technical and not justified either by reason or policy."

As pointed out by the court in its opinion, it is generally said to be a rule of statutory construction that when a statute, which has been construed by the court of last resort of a State, is re-enacted in substantially the same language, the legislature will be presumed to have adopted such construction.[2] But this, at most, is a rule of con-

[2] *Anable* v. *Com.,* 24 Gratt. (65 Va.) 563; *Mangus* v. *McClelland,* 93 Va. 786, 22 S. E. 364; *Cheatham's Adm'r* v. *Aistrop's Adm'r,* 97 Va. 457, 461, 34

struction which is not inflexible, nor is it of universal application to everything that is loosely spoken of as "construction." This rule has often been repeated by courts and textwriters, not infrequently in rather loose language; but so far as I have been able to find, there has been little critical examination by either of the true scope and proper limitations of the rule, or of the definition of what is properly comprehended within the purview of "construction" as it is therein used. Probably this is due to the large amount of work such a critical examination would entail. It would necessitate the examination of practically all the cases in which the rule has been pronounced, and also of many cases (not readily ascertainable from any digest), in which the rule is not mentioned.

Where it is applied, the rule is usually pronounced without critical discussion thereof, and sometimes in loose and inaccurate language. Some of the cases, for instance, go so far as to assert that the re-enactment of a statute, even in a general codification of the statute law of a State, makes the prior construction of the statute a part of the statute law of the State. (See cases cited Cent. Dig., Statutes, section 255¾.) Where it is not applied, the courts usually adopt the technique of either saying nothing about the rule, or of explaining away the prior construction by limiting what was there said to the very facts of those cases, or showing that it was dictum, or could be so regarded.

This rule applies primarily to the definition of the meaning of the language and terms used in a statute. It has, or should have, no application where the real point decided by the court was that the resultant obtained by the action of a statute relating to one subject upon another statute relating to a different subject is a certain legal rule. In

S. E. 57; *Swift & Co.* v. *Wood*, 103 Va. 494, 49 S. E. 643; *Elliott* v. *Ashby*, 104 Va. 716, 52 S. E. 383; *Draper* v. *Com.*, 132 Va. 648, 111 S. E. 471; *Kelly* v. *Trehy*, 133 Va. 160, 169, 112 S. E. 757; *Williams' Adm'r* v. *Dean*, 144 Va. 831, 131 S. E. 1: cases cited Century Digest, Statutes, section 255¾.

such cases the decision of the court is not a "construction" of the statute, within the general rule above announced. In such cases the rule applicable seems to me to be merely the rule of *stare decisis*.

What was really decided in *Nixdorf* v. *Blount, supra,* was that the Virginia statutes relating to improvements did not apply. What was really decided in *McDonald* v. *Rothgeb, supra,* was that the recordation statutes overrode the statute law in question and barred a recovery for improvements. What was really decided in *Smith* v. *Woodward, supra,* was that the rule of the common law that, the purchaser under a deed of trust must ascertain at his peril that the trustee had not exceeded his powers under the deed of trust, overrode the statute here under consideration and barred a recovery for improvements.

Though such a decision is often spoken of as a construction of a statute, and at times I may herein so use the term, it is not in fact a construction.

The rule here under consideration is not a rule of substantive law, but of construction, whose purpose (and therein lies one of its limitations) is to enable the court to ascertain the intention of the legislature as expressed in the re-enacted statute. When to apply the rule is, as in this case, to nullify the plain language of the re-enacted statute, the rule would seem to be, at least, of very doubtful application. Two of the strongest presumptions known to the law with reference to the construction of statutes are (1 that when its language is plain and unambiguous and there is nothing to show that the words are used in a technical sense, the statute means what it says when its words are given their usual and ordinary meaning; and (2) that remedial statutes are to be given a liberal, or at least, a reasonable construction to make effective the remedy.

However this may be, this court has not in the past adhered to the view that the enactment of a revised code

has the effect of absolutely crystallizing and making statutory every prior construction of, or decision as to the effect and application of, every existing statute incorporated in the revised code without substantial change. This is shown by the two examples below cited, and doubtless other examples are to be found both in the Virginia cases and cases from other jurisdictions.

In *Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312, 681, the court determined and declared the effect of section 2463 and section 2465, Code Va. 1887 (which relate to the effect of unwritten contracts and unrecorded deeds) when read in conjunction with section 3567, Code 1887 (which relates to the lien of judgments upon real estate). These sections of the Code of 1887 were incorporated in the Code of 1919, as sections 5192, 5194, and 6470, without change in the language under consideration in *Flanary* v. *Kane*. But in the recent case of *Miller* v. *Kemp* (1931), 157 Va. 178, 160 S. E. 203, this court, in effect, overruled in material particulars what was said in *Flanary* v. *Kane* as to the combined effect of these statutes.

In *Wilson* v. *Branch* (1883), 77 Va. 65, 46 Am. Rep. 709, the court construed section 1 and section 2, chapter 110, Code 1849, as meaning that where a woman united with her husband in a deed of trust conveying land, if the land was not sold under the deed of trust during his lifetime, the widow was entitled as dower to one-third of the land conveyed—not merely to dower in the surplus remaining after sale under the deed. These sections of the Code of 1849 were re-enacted verbatim as sections 2267 and 2268 in the Code of 1887. In *Hoy* v. *Varner* (1902), 100 Va. 600, 42 S. E. 690, the doctrine announced in *Wilson* v. *Branch* was overruled. There are doubtless cases which might be pointed out in which this and other courts have done the same thing; but these two cases will suffice for the purpose of illustration. See also *Poteet* v. *International Harv. Co.*, 153 Va. 304, 149 S. E. 512, 65 A. L. R. 958.

In these instances the doctrine announced in the cases overruled could as well be called a "canon of property" as the doctrine here under discussion; though in none of them do I think that the ruling could properly be said to have become a canon of property.

My view is that the question, shall the three cases under discussion be overruled? is one which should be determined under the rules applicable to the doctrine of *stare decisis*, not by any rule of presumption from the re-enactment of the statutes under consideration as a part of the Code of 1919.

As I have before said, the three cases followed by the court are not in accord with some of the earlier Virginia decisions on this subject. I find only one reported case, which has been before this court since the Code of 1919 became effective, in which sections 5491–5494 could apply in view of their expressed terms, *Sims* v. *Capper*, 133 Va. 278, 112 S. E. 676. In that case the opinion and the record both show that the defendant had *constructive* notice of the defects in his title. There was a judgment for the defendant below, but this court reversed that judgment and here entered final judgment for the plaintiff for the recovery of the land. It is not without significance that the court in an opinion written by Judge Sims and concurred in by Judge Burks remanded the case without prejudice to the right of the defendant to file a petition in the court below to recover under sections 5491–5494 for the improvements placed on the land by him.

While it will tend to make this dissenting opinion long and perhaps tiresome reading, I think the importance of this subject warrants a more extended examination of the history of the statute here in question, and the decisions of this and other States relating to the subject here under consideration.

"By the rigid rules of the common law, whoever put

improvements on real estate did so at his peril. Even though he acted in good faith and in the honest conviction that the land was his, whenever any other party judicially established his title to the land, such party had a right to all the improvements situated upon it. This rule was based upon the notion that the owner should not pay an intruder, or disseisor, or occupant, for improvements which he never authorized. It was supposed to be founded in good policy, inasmuch as it induced diligence in the examination of titles, and prevented intrusions upon and appropriations of the property of others. The rule of the civil law was, however, more liberal, and permitted one who had made permanent improvements on land in his possession, under the *bona fide* belief that he was the owner of it, to exact full compensation for the value of such improvements, less the value of the use of the land, before he could be compelled to surrender it. * * *

"Chancery borrowed the rule of natural equity from the civil law, and made the first innovation upon the common law doctrine. Where the true owner came into a court of equity, as a complainant, seeking an account against the purchaser for mesne profits, after a recovery of the land in an action at law, or when such owner had only an equitable title, and was compelled to sue in equity for a recovery of the land, the court refused its aid to the complainant, except upon the terms of compensation to the *bona fide* holder for his improvements, upon the principle that he who seeks equity must do equity." The occupant, however, was limited to the right to set off the enhancement of the value due to the improvements made by him against the demand of the true owner for rents and profits. If such enhancement of the value exceeded the amount of rents and profits recoverable by the true owner, no compensation for the excess could be allowed to the occupant. 14 R. C. L., page 17; note, 15 Am. Dec. 349; note, 81 Am. St. Rep. 184;

note, 53 L. R. A. 337; *Irick* v. *Fulton's Ex'rs*, 3 Gratt. (44 Va.) 193; *Graeme* v. *Cullen*, 23 Gratt. (64 Va.) 266; *Wood's Ex'r* v. *Krebbs*, 33 Gratt. (74 Va.) 685; *Effinger* v. *Hall*, 81 Va. 94.

The equity of the *bona fide* purchaser who, in the honest belief that he had a good title to the land, made lasting and permanent improvements upon land which turned out to be another's, was so strong and pervasive as to force its recognition to a partial extent by courts of law in some States without the aid of a statute (note to *Pitt* v. *Moore*, 6 Am. St. Rep. 495); but the equitable rule has never been recognized by courts of law in Virginia independently of statutory provision.

The recordation statutes of Virginia makes the recordation of a muniment of title or *lis pendens*, or the docketing of a judgment, notice thereof to the world. As the recordation statutes are construed by the courts of Virginia, recordation or docketing not only affords a means of knowledge, but imposes a positive duty upon all persons dealing with land to use such means. Generally speaking, a court of equity has no power, in the absence of statutory authority so to do, to modify or circumscribe the effect given by a statute to the recordation of a muniment of title or the docketing of a judgment; and, therefore, in the absence of a statutory provision to the contrary, the notice given by such recordation has in equity been held to be equivalent to knowledge itself. *Morris* v. *Terrell*, 2 Rand. (23 Va.) 6; *Burwell's Adm'rs* v. *Fauber*, 21 Gratt. (62 Va.) 446; *Armentrout's Ex'rs* v. *Gibbons*, 30 Grat. (71 Va.) 632; *Lamar's Ex'r* v. *Hall*, 79 Va. 147; *Effinger* v. *Hall*, 81 Va. 94.

Accordingly, it has been held by the courts of Virginia that under the recordation statutes of this State, in the absence of statutory provision on the subject, a person is not entitled in equity to any allowance for improvements made by him upon land held by him under a defective

title, when an examination of the records would have disclosed the defect in his title; and that to be entitled under the equity rule (independent of statutory provision) to an allowance for improvements, the person making the improvements must have been, within the technical meaning of the phrase, a *bona fide* purchaser without notice, actual or constructive, of the infirmity in his title. *Morris* v. *Terrell*, 2 Rand. (23 Va.) 6; *Graeme* v. *Cullen*, 23 Gratt. (64 Va.) 266, 300; *Burton* v. *Mill*, 78 Va. 468; *Effinger* v. *Hall*, 81 Va. 94, 104–106; *Fulkerson's Adm'x* v. *Taylor*, 102 Va. 314, 46 S. E. 309; *Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312, 681.

A critical examination of the opinions, however, does not always bear out the assertion that the person making the improvements must have been, within the full technical meaning of the phrase, a *bona fide* purchaser without notice, actual or constructive, of the defect in his title. *Morris* v. *Terrell*, 2 Rand. (23 Va.) 6, 13; *Ruffners* v. *Lewis' Ex'rs*, 7 Leigh (34 Va.) 720, 743, 30 Am. Dec. 513; *Cullop* v. *Leonard*, 97 Va. 256, 33 S. E. 611; *Irick* v. *Fulton's Ex'rs*, 3 Gratt. (44 Va.) 193.

The first statute enacted in Virginia giving a person holding land under a defective title a right to an allowance for improvements made by him upon the premises is Acts 1831–32, chapter 72, section 7, page 61, the material parts of which act are quoted in the footnote.[3]   This act, which

---

[3] Acts 1831-32, chapter 72, section 7, page 61: "Whenever any judgment or decree shall be entered  *  *  for recovery of land, or the possession thereof, situated in any of the said counties, lying west of the Alleghany mountain, it shall be lawful for the tenant or defendant in possession  *  *  to show that such tenant or defendant, or those under whom he or they may claim, and whose rights they hold, have *bona fide* settled and seated such land, under and by virtue of grants from the Commonwealth, issued previous to the passage of this act, and made valuable and permanent improvements thereon, over and above the value of the use and occupation thereof; and if such court shall be satisfied with the probable truth of such allegations the execution of the judgment or decree shall be suspended by order of such court, until the same can be enquired of by a jury which shall  *  *  ascertain the reasonable additional value given to such recovered land by the permanent improvements made on the same, previous to notice delivered by

seems never to have been called into question in any of the reported cases which have come before this court, remained the only statute on the subject until the enactment of chapter 136 of the Code of 1849, sections 1 and 4 of which, so far as is here material, were in the same language as sections 5491 and 5494 of the Code of 1919, hereinbefore quoted in footnote 1, *ante.*

In reporting these two sections the court revisor of the Code of 1849 appended a note stating the reasons for the insertion of these provisions, and that they were taken substantially from the Revised Statutes of Massachusetts (1836), page 612, relating to the recovery of land by writ of entry, which note is quoted in footnote 4.[4]

Revised Statutes of Massachusetts (1836), page 612, sections 16 and 17 (chapter 237, sections 16 and 17, Gen. Laws of Mass., 1921), read as follows:

"Section 16. If the land demanded has been actually held and passed by the tenant and by those under whom he claims for six years next before the date of the writ, he shall, if judgment is against him, be entitled to compensation as hereinafter provided for the value of any buildings or improvements made or erected on the land by him or by any person under whom he claims.

the plaintiff or his agent in writing to the defendant or tenant in possession of the adverse title \* \* over and above a reasonable allowance for the occupation thereof, and \* \* no process shall issue or decretal order be carried into effect for changing the possession thereof until the same shall be fully paid and discharged."

[4] Reports Revisors 1849, page 699: "The statute cited in the margin" (Acts 1831-32, page 61, chapter 72, section 7), "from which this is taken, confines this remedy to the cases of lands west of the Alleghany, and to defendants claiming '*bona fide* under grants from the Commonwealth previous to the passage' of the act. If the law be just and salutary, it ought to be extended to all defendants who make improvements on property to which they have reason to believe their title to be good. Indeed, in so extending it, it is not clear that except as furnishing a more summary and convenient remedy, it introduces any new principle. A court of equity has frequently given a *bona fide* occupant of land recovered from him by paramount title, compensation for valuable improvements made while he believed himself to be the real owner. *Vid. Southall* v. *McKeand,* 1 Wash. (1 Va.) 336; *Morris* v. *Terrell,* 2 Rand. (23 Va.) 14; *Higinbotham* v. *Burnet,* 5 John. Ch. (N.Y.)

"Section 17. The tenant shall also be entitled to like compensation although the land has not been so held for six years, if he holds it under a title which he had reason to believe good."

We have found no Massachusetts case decided prior to 1849 in which the court passed upon the effect which the constructive notice given by the recordation or registration of muniments of title or the docketing of judgments has upon the right of a person making claim under section 17 of this statute for improvements. But in an examination of the Massachusetts cases from 1836 to the present time we have not found any case in which the Massachusetts court has held that the constructive notice given by the records is alone sufficient to debar a claimant from recovering for improvements under section 17. On the contrary, while the court seems never pointedly to have discussed this question, in the following cases the right of recovery of improvements was permitted under section 17, although had the defendant examined the records he would have discovered the defect in his title. *Plimpton* v. *Plimpton*, 12 Cush. (Mass.) 458; *Wales* v. *Coffin*, 100 Mass. 177; *McSorley* v. *Larissa*, 100 Mass. 270; *Sunter* v. *Sunter*, 190 Mass. 449, 77 N. E. 497.

It was, however, held in *Haven* v. *Adams*, 8 Allen (Mass.) 363, that a purchaser *pendente lite* cannot avail himself of

184. And it may be considered as a settled rule that a court of equity would never deprive a defendant of the property under such circumstances, without compelling the plaintiff to allow for the improvements. *Vid. Swan* v. *Swan*, 3 Eng. Ex. Rep. 443. If it be *equity* to do so, we can see no objection to recognizing it as a general rule, both at law and equity, and allowing it to be administered by the jury at the same time that they assess damages for the plaintiff, or at the instance of the defendant when he asks it in proper time. The right to set off for permanent improvement against the damages for mesne profits is recognized in New York (2 Rev. Stat. 236), and in Massachusetts the relief proposed in this chapter is given. Indeed we have followed the Massachusetts statute substantially, except that we make the right to allowance for improvements to depend on the fact that the defendant had reason to believe his title good, as well in respect to improvements made five years before the action, as in respect to those made within the five years. *Vid.* Mass. Rev. page 612, from section 16 to section 32."

this statute as he is charged with a knowledge of proceedings had in the suit; and that this statute has no application where the suit is to subject the premises to the payment of a mortgage or other lien upon the land, because in such a case the person making the improvements may avail himself of the improvements by merely paying the debt for which the land is subjected. But see *McSorley* v. *Larissa*, 100 Mass. 270, where, under an exceptional state of facts, in a suit to redeem land from a mortgage, the purchaser from the mortgagee in possession was held entitled to recover for improvements.

The Virginia statute (section 5491, Code 1919, section 1, chapter 136, Code 1849) is by its terms limited to cases in which a decree or judgment is rendered against a defendant for land; and by section 5499, Code 1919 (chapter 136, section 9, Code 1849), it is expressly provided that "nothing in this chapter * * * shall extend or apply to any suit brought by a mortgagee, or trustee in a deed of trust to secure creditors, his heirs, or assigns, against a mortgagor or grantor, in such deed of trust, his heirs, or assigns, for the recovery of the mortgaged premises or of the land conveyed by such deed of trust."

Many of the cases in which this statute has been considered by this court have been chancery causes in which the statute has been held to be inapplicable because of one or the other of the two limitations above mentioned. The cases cited in footnote 5[5] belong to this category, and what

[5] *Graeme* v. *Cullen*, 23 Gratt. (64 Va.) 266. A suit to subject land in hands of grantor in a first lien deed of trust to the payment thereof, in which a creditor in a second lien deed of trust claimed allowance for improvements to pay for the erection of which the second deed of trust was given.

*Wood's Ex'r* v. *Krebbs*, 33 Gratt. (74 Va.) 685. A suit to subject to a first lien under a deed of trust land held by mesne conveyances from a grantor, who had purchased it at a sale in a suit brought by the holder of a second lien under the same deed of trust, to which suit the first lien holder was not a party, and in which suit the special commissioner had executed a deed to the purchaser without taking a lien on the land to secure the deferred installments of the purchase price as ordered in the decree confirming the sale.

*Tyler* v. *Tom*, 75 Va. 116. A proceeding in a chancery suit to subject

is said in them and in *Effinger* v. *Hall*, 81 Va. 94, as to the effect of constructive notice upon a claimant for improvements either has no reference to a case in which section 5491 is applicable, or is dictum.

In *Effinger* v. *Hall*, 81 Va. 94, the court held this statute not to apply because of the first limitation above mentioned. In 1835 Hall died. By his will he devised a tract of land to his wife for life with remainder to his executors; and, as the court in this suit construed the will, directed that at his wife's death his executors should sell the land and divide the proceeds into eight equal parts, one of which he gave to each of eight designated persons or classes of persons. Liggett purchased the widow's life right and the interest of those entitled to thirteen-sixteenths of the proceeds of sale of the land. In 1850 Liggett conveyed an unimproved fifteen acre parcel of this tract to Effinger by a deed purporting to convey the land in fee simple with general warranty. Effinger in turn cut the fifteen acres up into building lots, which he conveyed to divers persons, who made valuable improvements thereon. The widow Hall died in 1879. In 1881 those persons whose interest Liggett had not purchased brought suit against Effinger and his

---

land (which had been sold in that suit to satisfy a vendor's lien thereon) to the payment of the deferred installments of the purchase price, due under the court sale, the land being still in the hands of the original purchasers at the court sale, who had not procured a deed therefor.

*Burton* v. *Mill*, 78 Va. 468. A suit to set aside a deed as being fraudulent as to creditors of the grantor, and to subject the land in the hands of his immediate grantee to judgments against the grantor.

*Hurn* v. *Keller*, 79 Va. 415. A suit to subject land of an ancestor in the hands of his heir to payment of ancestor's debts, for which purpose suit was pending against the heir at the time improvements were made.

*McGee* v. *Johnson*, 85 Va. 161, 7 S. E. 374, 377. A suit to subject land claimed by a son under a conveyance from his father to judgments against his father, in which suit the court held that the deeds under which grantees held were "clumsily devised schemes on the part of these appellants to hinder, delay and defraud the creditors of his father."

*Fulkerson's Adm'x* v. *Taylor*, 102 Va. 314, 46 S. E. 309. A suit to subject to the payment of judgments against Fulkerson land which he had purchased prior to 1889 and subsequently sold to Vanoy by an unrecorded written contract, the land being then held by a grantee from Vanoy under a deed duly recorded.

grantees, praying that the will of Hall be construed, and that the land devised under the will of Hall be sold and the proceeds divided among those entitled thereto.

The court ordered the land sold and the proceeds divided. The claimants under the deeds from Effinger then petitioned the court to decree that in a division of the proceeds they be allowed for the enhancement of the value of the property which was due to the improvements placed thereon by them, alleging that they made the improvements while holding the premises under a title believed by them to be good, and in ignorance of the provisions of the terms of the will of Hall.

This court held that the statute (now section 5491, Code 1919) did not apply, saying: The statute is "in terms confined to cases in which a decree or judgment is rendered against any defendant for the recovery of the land, which is not the present case. For here, according to the doctrine of equitable conversion, the will having directed the land to be sold at the death of the life tenant, the appellees, and the other legatees having similar interests, never had an estate in the land itself, but only an interest in the execution of the trust." This seems to be a narrow and technical construction of the statute; but it is in accord with the pronouncement of the court in *Hollingsworth* v. *Funkhouser*, 85 Va. 448, 454, 8 S. E. 592, where it is said

*Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312, 681. A suit to subject to judgment liens against Barron land to which Barron had held the equitable title under a contract not of record, which land had passed to Flanary from Hyatt (Barron's vendor under the unrecorded contract) by mesne conveyances duly recorded: The deed from Hyatt to his immediate grantee being held by the court sufficient to give notice of Barron's equitable title.

*Branham* v. *Artrip*, 115 Va. 314, 79 S. E. 390. A chancery suit in which section 5491 was held to be inapplicable, because no judgment or decree was entered against a defendant for the recovery of land.

*Nixdorf* v. *Blount*, 111 Va. 127, 68 S. E. 258. A suit to subject land in the hands of an immediate grantee to a duly docketed judgment against his grantor, for the enforcement of which a suit was pending, with notice of the *lis pendens* duly recorded, at the time the grantee purchased, of which judgment and suit the grantee had *actual* notice at the time the improvements were made.

that the statute, being in derogation of the common law, is to be strictly construed, a statement which, I think, should be expressly disapproved.

In holding in *Effinger* v. *Hall, supra,* that, in the absence of statutory provision, the rule in equity is that the constructive notice given by the recordation of a deed, deed of trust, will, or other muniment of title, or *lis pendens,* or the docketing of a judgment, is sufficient to bar an occupant claiming land in derogation thereof from any allowance for improvements made on the land, the court says:

"It is difficult to see how any other conclusion can be reached consistently with the registry laws of the State. * * *

" * * * The question is, were they *bona fide* possessors? It is not sufficient to say that by their improvements the property has been enhanced in value. The appellees cannot be charged with any part of the cost of those improvements, if the same were made by the appellants, or those under whom they claim, with notice of the appellees' claim; or, in other words, with notice of the infirmity in their own titles. And how can they be held to have been without notice, when, as we have seen, the will of James Hall was duly recorded, and although destroyed during the war, after many of the improvements for which compensation is claimed had been made, it was again recorded after the close of the war, and thus gave notice to the world of the rights of the appellees. Moreover, the deed of April 6, 1850, from Liggett to M. H. Effinger, through whom the appellants, or the most of them, derive title, refers in terms to the will, and thus put the parties upon inquiry when their respective titles were acquired. And 'no principle is better established than that a purchaser must look to every part of the title which is essential to its validity.' *Brush* v. *Ware,* 15 Pet. 93 [10 L. Ed. 672]."

But the court adds (page 107 of 81 Va.): "These remarks

however, must be understood as applying strictly to the case before us. The case is not affected by the provisions of our own statutes in relation to the action of ejectment and to the allowance for improvements."

The underlying theory of the rule in equity (independent of such a statutory provision as section 5491) as expounded in *Effinger* v. *Hall* and the cases cited in footnote 3, *ante*, seems to be this: The recordation statutes, in effect, provide that when a grantee has recorded his deed or a creditor has recorded his deed of trust, or docketed his judgment, he has done all that he is bound to do. They make the recordation of a muniment of title or *lis pendens*, or the docketing of a judgment, notice to all the world thereof, and place upon every person dealing with land affected thereby the positive duty of examining the records to ascertain whether there be any such deed, deed of trust, *lis pendens*, or judgment. A court of equity has no power to modify the effect given by statute to the recordation or docketing, though in equity the conduct of a litigant may estop him from relying thereon. Hence, the constructive notice given by recordation or docketing is in equity, as at law, equivalent to actual notice, in the absence of a statute otherwise providing.

It may well be noted here, however, that even though a court of equity may not have the power to modify or change the effect given by statute to the recordation of a muniment of title or the docketing of a judgment, the General Assembly may do so to any extent it may deem proper.

We come now to an examination of those Virginia cases to which the statute (section 5491) has not been held inapplicable by reason of one or the other of the above mentioned limitations upon its scope.

In *McComas* v. *Easley*, 21 Gratt. (62 Va.) 23, though no reference is made to the statute, it was held: Where a purchaser of land under an oral contract who has been

put into possession sues for specific performance, if a different oral contract is stated in the answer and proven, the bill may be dismissed, or the court may, in a proper case, give the plaintiff the election to have the contract enforced as proved, or to have it rescinded. But in such a case if the purchaser elect to rescind, he is to be charged with the rents and profits while in possession, and is to be credited with so much of the purchase money as he has paid with interest, "together with the value of any permanent improvements he may have put on the premises."

In *Hollingsworth* v. *Funkhouser*, 85 Va. 448, 8 S. E. 592, the facts were these: Hollingsworth was the true owner of the land in question under a patent from the Commonwealth granted in 1795. Funkhouser claimed title by mesne conveyances from the grantee in a patent dated in 1835. Hollingsworth brought an action of ejectment against Funkhouser to recover the land. His defense was adverse possession under color of title tracing back by regular conveyances to the grantee in the patent of 1835. The court held that adverse possession for the requisite period was not proven, and rendered judgment for the recovery of the land.

Funkhouser then filed his petition, under what is now section 5491, claiming to be entitled to compensation for improvements put upon the premises while holding the premises under title believed by him to be good. The trial court rendered judgment allowing him $986.00 as compensation for his improvements. This court reversed the trial court on this point on the sole ground that the evidence failed to show that the value of the premises had been enhanced by the so-called improvements to an amount greater than the value of the use and occupation of the land by the defendants.

The point seems not to have been made that the recordation of the patent of 1795 was constructive notice thereof

to the world which barred the defendants of the right to an allowance for improvements under the statute. At least, there is no reference to such a contention in the opinion; and the case was dealt with in this court on the theory that he was entitled to recover for the improvements, if they had enhanced the value of the land by an amount greater than the value of the use and occupation of the land without the improvements.

It does not appear from the opinion whether these lands lie "west of the Alleghany mountain" or not. But if so, under the statutes of 1831–32, hereinbefore quoted, it would seem plain that constructive notice of the patent of 1795 would not have been sufficient to bar these defendants from recovering for improvements; and the note of the revisors quoted in footnote 2 would indicate that the General Assembly in enacting the present statute certainly did not intend to narrow the scope of that act.

The decision in *Cullop* v. *Leonard*, 97 Va. 256, 33 S. E. 611, would seem to be sustainable on principle only by giving broad latitude to the meaning of the phrase "while holding the premises under a title believed by him to be good." Mrs. Cullop, an old and ignorant woman, executed a deed of trust conveying a tract of land to secure A. M. Dickinson, her attorney, for services. The land was sold under the deed of trust and purchased by Dickinson himself. This suit was instituted to set aside the deed of trust and the deed from the trustee to Dickinson, on the ground that Dickinson had imposed upon her ignorance and incapacity, and procured from her contracts for exorbitant fees, disproportionate to the service rendered.

This court held that the deed to Dickinson should be set aside; but that the deed of trust should be held good to secure to Dickinson whatever sum should be ascertained to be a reasonable fee for the service rendered. Dickinson then set up a claim for compensation for improvements.

The trial court allowed him $610.00. This court reversed the trial court on this point because some things allowed for as improvements could not properly be classed as improvements. But it remanded the case with instructions to the trial court to allow Dickinson for such things as come within the definition of improvements as defined by the court. No reference is made in this case to the statute. It may be noted that this is the only case which we find in the Virginia reports which allows a grantee in a deed set aside for his own misconduct to recover for improvements placed upon land by him, while holding it under that deed. But there are decisions in other States which under a similar state of facts have permitted a recovery for improvements.

*Keister* v. *Cubine*, 101 Va. 768, 45 S. E. 285, was a suit brought to set aside a deed conveying land for breach of the covenant to support and maintain Mrs. Cubine, which was a part of the consideration for which Mrs. Cubine had conveyed the land to her daughter, Mrs. Keister. Mrs. Keister died intestate, leaving her husband and several infant children by her marriage to him. After her death her husband, who held the land under his right of curtesy, failed to perform the covenant to support Mrs. Cubine, and this suit was brought by her to annul the deed and recover the land. The court held that Mrs. Cubine was not entitled to recision of the deed and an entire restoration of the property to her use; but appointed a receiver to take charge of the property and administer it with due regard to the ultimate rights of the infant heirs as well as the paramount right of the grantor to a support. Keister being ousted by the decree of all enjoyment of the property, filed a petition asking for an allowance for improvements made by him, which was refused upon the ground that he *knew* of the covenant in the deed which he himself broke before the improvements were made.

*Wright* v. *Johnson*, 108 Va. 855, 62 S. E. 948, was an action of ejectment brought by the heirs of a wife, who had died without issue, to recover land which had belonged to her estate, which after her death had been conveyed by her husband to a third party. The improvements for which an allowance was sought had been put upon the premises by the husband after the death of the wife. The question of constructive notice was not involved or discussed by the court. Recovery for improvements was denied upon the ground that the husband had *actual knowledge* that the land belonged to the wife, and that, at most, he had only a life estate.

In *Nixdorf* v. *Blount*, 111 Va. 127, 68 S. E. 258, this court says: "The question presented upon this appeal is whether the lien of a judgment against an alienor binds improvements made on the land by an alienee with constructive and actual notice of the judgment and a *lis pendens* to enforce it against his grantor at the date of purchase."

Under the decisions above cited this presents a case to which, by reason of the first limitation above mentioned, section 5491 has no application. The court recognized this fact and quoted with approval the statement in *Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312, 681, that "the provisions of chapters 124 and 125 of the Code (section 5483, chapter 224, and section 5491, chapter 225, Code 1919) * * * on the subject of improvements have no application to a judgment creditor seeking to enforce his lien upon the land upon which the improvements have been made." Yet the court proceeded to pronounce the following dictum with reference to the construction of the statute here under consideration:

"The right to allowance for improvements, under the Virginia statute, which is an innovation on the common law, is confined to cases in which the improvement was made under a title believed to be good, and that is not

predicable of a purchaser with notice of the incumbrance. Such purchaser has no higher right to protection with respect to money invested in improvements than to the original purchase price paid for the land. Indeed, in its last analysis, the entire contention of the appellant rests upon the fallacious proposition that an equity may be created after, which had no existence before, the rendition of the judgment—a doctrine which would introduce a mischievous change in the law, and that too, in behalf of a class who voluntarily elect to expend their money in the purchase and improvement of property known to be incumbered.

"It is a principle of real estate law, that permanent improvements placed upon land become a part of the realty, and the owner must take notice that all liens which rest upon the fee will necessarily attach to such permanent structures as he may choose to erect. 1 Min. Real Prop. sections 17, 23."

The next case, *McDonald* v. *Rothgeb*, 112 Va. 749, 72 S. E. 692, Ann. Cas. 1916B, 63, was an action of ejectment in which there was a judgment against the defendant for the recovery of the land, the pertinent facts in which were as follows:

In 1883, Coverstone in consideration of $200.00 conveyed to Jennie Powell for life, with remainder to her children, an unimproved lot in the town of Shenandoah. This lot was subject to a vendor's lien for $150.00 due the Shenandoah etc. Manufacturing Company. In 1884, Jennie Powell and her husband conveyed this lot to Jane C. Fritz by a general warranty deed purporting to convey a fee simple estate therein; and Jane Fritz made certain improvements thereon. In 1888, a chancery suit was instituted to subject this lot to the said vendor's lien. To this suit none of the children of Jennie Powell were made parties. In this suit a copy of the deed from Coverstone

to Jennie Powell was filed as a part of the record. The cause was referred to a commissioner, who reported as liens on the lot a balance due on said vendor's lien and certain other liens accrued against Jane C. Fritz. The court confirmed this report and ordered the lot to be sold to pay these liens. The lot was sold under the decree of the court to Kaggey and Miller, and conveyed to them by deed dated May 2, 1887. Subsequently it passed by a regular chain of conveyances, duly recorded, from Kaggey and Miller to Elizabeth Wyant, who in 1895 conveyed one-half of the lot to Kite. In 1896, the improvements on the lot were destroyed by fire. Kite rebuilt on the half which had been conveyed to him. Mrs. Wyant rebuilt on the other half, and in October 1896, conveyed this half of the lot to Rothgeb. In 1910, Mrs. Powell died; and two of her three children brought this action of ejectment to recover two-thirds of this lot. The trial court sustained the recovery of the land, and allowed Kite $940.00 and Rothgeb $340.00 for the improvements put thereon by them, or their grantor.

This court in reversing the trial court on the question of allowances for improvements said: "With respect to the matter of allowance for improvements, we are of opinion that the question involved is ruled by the conclusion reached by this court in the analogous case of *Nixdorf* v. *Blount*, 111 Va. 127, 68 S. E. 258, and cases cited in the opinion.

"It seems to us that to hold that a purchaser can close his eyes to his record title and recover for improvements on the theory that 'there was reason to believe the title good' (Virginia Code 1904, section 2763), would be to set a premium on negligence and nullify our registry statutes.

"It was said in *Bodkin* v. *Arnold*, 48 W. Va. 108, 109, 35 S. E. 980, 981, that 'belief, to be *bona fide*, must be founded on ignorance of facts and not ignorance of law.' And ignorance of fact cannot be predicated of a case where the purchaser is affected with constructive notice."

It is plain that the court in this case has applied to a case coming within the purview of section 5491, the rule which has been applied by the Virginia court in chancery causes to which the statute has no application. The court seems to have overlooked the fact that while a court of equity may not modify or change the effect given by the recordation statutes to the recordation of a muniment of title or the effect of a failure to perform the duty thereby imposed, the General Assembly may do so. And I am of opinion that the General Assembly has, by the provisions of section 5491 and section 5494, done so as to improvements placed upon land by an occupant while holding the premises under a title which he believes, upon reasonable grounds, to be good, wherever there is a judgment or decree against him for the land.

The last case which has come before this court in which the question here under consideration was discussed is *Smith* v. *Woodward*, 122 Va. 356, 94 S. E. 916, which was a suit brought to set aside a deed made by a trustee under a deed of trust to a purchaser at the trustee's sale thereunder, on the ground that the trustee had exceeded his authority in selling the land.

Benjamin P. Woodward conveyed to E. Frank Story, trustee, to secure a debt, a farm of 558 acres, a lot with dwelling thereon, and a lot with a peanut factory thereon. Default was made, and the trustee advertised all three properties for sale. Before, and at the sale, the grantor in the deed of trust requested the trustee to sell only so much of the property as was necessary to pay the debt, and to sell the farm first as he thought it would bring enough to pay the debt. At the sale, which was had on March 20, 1915, the farm was the first property offered for sale, and it sold for more than enough to pay the debt. Though this was so, the trustee proceeded also to sell the dwelling and the factory lots, both of which were cried out to J.

Davis Woodward, who afterwards, in consideration of $100.00, transferred his rights under his bid for the dwelling to J. W. Smith, who had been one of the bidders at the trustee's sale. On March 26, 1915, the trustee executed a deed conveying to Smith the dwelling house lot, in which deed J. Davis Woodward joined. As soon as Smith got his deed to the property he proceeded to make improvements on it. On May 10, 1915, this suit was instituted by the grantor in the deed of trust to set aside the deed to Smith on the ground that when the trustee had sold the farm for more than enough to pay the debt secured by the deed of trust, he was without authority to sell the dwelling house or factory lot. In confirming the decree of the trial court setting aside the deed on this ground, this court, speaking through Burks, J., said:

"The rule of *caveat emptor* applies with full force to sales made under deeds of trust to secure creditors. The deed is the chart by which the trustee is to be governed. He is a special agent with designated powers, and a purchaser at a sale made by him takes upon himself the risk not only of the fairness of the sale, but of the regularity thereof, and of his compliance with all the substantial requirements of the instrument under which he acts. Such purchaser is chargeable with notice of the extent and limitation of the trustee's powers. He is bound not only by *actual* notice, but by *constructive* notice as well, which is the same in effect as actual notice. If he has notice, actual or constructive, that the trustee is exceeding his authority in making the sale, or is not complying substantially with the terms of the instrument creating the power of sale, he does not occupy the position of a purchaser without notice. * * *

"In the instant case J. Davis Woodward, the purchaser at the trustee's sale, had constructive notice of the contents of the deed under which he purchased, and of the amount

of Mrs. Story's debt, and, being the purchaser of the farm, knew that the farm had brought ample to pay that debt. He knew, therefore, that the deed to secure Mrs. Story's debt had served its purpose, and that it was improper for the trustee to undertake to make further sales under that deed, and that any such sales would at the least be irregular. * * *

"J. Davis Woodward was not an innocent purchaser. He had full notice of the fact that the farm had sold for enough to pay the debt secured, that the deed had accomplished its purpose, and that it was improper for the trustee to proceed to sell the dwelling and factory lot. Nor do we think that J. W. Smith, the appellant, stands on any higher ground. He was present at the sale and bid as high as $3,600.00 on the dwelling which was cried out to J. Davis Woodward at $3,650.00, and also had notice of the same facts with which it is stated above that J. Davis Woodward was chargeable. *Nor was he a remote purchaser.* (Italics ours.) He took his deed directly from the trustee."

In sustaining the trial court in refusing to allow Smith's claim for improvements, the court says:

"The appellant, J. W. Smith, claims for improvements placed on the dwelling after he became the purchaser thereof. The circuit court refused to make any allowance therefor, and in this we think there was no error. The statute allowing recovery for improvements restricts it to one 'holding the premises under a title believed by him * * * to be good.' Code, section 2760 (now section 5491). This court has held that this section has no application to one who is not a *bona fide* purchaser, and that a person with notice, actual or constructive, of infirmity in his title cannot recover for improvements. *Burton* v. *Mill,* 78 Va. 468; *Effinger* v. *Hall,* 81 Va. 94; *Fulkerson* v. *Taylor,* 102 Va. 314, 46 S. E. 309; *Nixdorf* v. *Blount,* 111 Va. 127, 68 S. E. 258; *McDonald* v. *Rothgeb,* 112 Va. 749, 72 S. E.

692, Ann. Cas. 1916B, 63. Means of knowledge, coupled with the duty of using them, are in equity equivalent to knowledge itself. *Cordova* v. *Hood*, 17 Wall. 1, 21 L. Ed. 587. It is useless to repeat here what has already been said about appellant's knowledge or means of knowledge. It must suffice to say that he had notice, or was chargeable with notice, of such defects in the title he was obtaining from the trustee as bars him from recovery for improvements. * * *

"The debtor lived in the city of Norfolk, seventy-five miles from the property, and the record fails to disclose that he saw the property or knew that any improvements were being made thereon, from the day of sale until just before this suit was brought. It is not shown how much of the improvement was made before, and how much after, this suit was brought, and it is not clear that the alleged improvements, consisting chiefly of painting and plastering were necessary, or that the value of the premises was actually increased thereby. See Code 1904, section 2763 (*i. e.* section 5494, Code 1919). However this may be, this suit to set aside the sale was brought within about forty days after the date of the sale, and thirty days after the appellant obtained his deed. The complainant was not negligent in bringing his suit."

The language used by the court is broad enough to be construed to hold that, under section 5491 (in the absence of fraud or some fact which estops the plaintiff from relying thereon), constructive notice of a paramount title is sufficient in all cases to bar recovery by the defendant for improvements made by him, though when he made the improvements he *in fact* believed, *upon reasonable grounds,* that he had a good title thereto; and that the *bare* fact that he could have discovered that his title was defective, if he had searched the records, is sufficient to bar his recovery for improvements, because he has constructive notice of whatever the records would disclose.

This is not the law under such statutes according to the great weight of authority in other jurisdictions, nor do we think it is the true interpretation of the purpose and meaning of the Virginia statute on the subject. Though there has been a marked tendency in some of the earlier Virginia cases to give the statute a strict construction (*Effinger* v. *Hall*, 81 Va. 94), yet in no case prior to the dictum in *Nixdorf* v. *Blount*, 111 Va. 127, 68 S. E. 258, has it been said that the constructive notice given by the records was alone sufficient to bar a recovery under section 5491.

In construing statutes similar to section 5491, Code Va. 1919, the courts in the States below named have held, either in express terms or by the conclusion reached, that the *bare* fact that a defendant could have discovered that his title was defective, if he had searched the records, is *not* sufficient to bar his recovery for improvements made by him: Arkansas, Georgia, Indiana, Iowa, Kentucky, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Oregon, Tennessee, Vermont and Wisconsin.

The Massachusetts statute and cases have been cited above. The pertinent language of the statutes of the other states named, and the cases in which it has been held as above stated, are given in the footnote.[6]

---

[6] *Arkansas:* "If any person, believing himself to be the owner, either in law or in equity, under color of title." Rev. Stat. Ark. page 1056, chapter 53, section 3703. *Beard* v. *Dansby*, 48 Ark. 183, 2 S. W. 701; *Shepherd* v. *Jernigan*, 51 Ark. 275, 10 S. W. 765, 14 Am. St. Rep. 50. See, also, *McDonald* v. *Rankin*, 92 Ark. 173, 122 S. W. 88, and *White* v. *Stokes*, 67 Ark. 184, 53 S. W. 1060.

*Georgia:* "The defendant who has *bona fide* possession * * under adverse claim of title may set off the value of all permanent improvements *bona fide* placed thereon by himself." Civ. Code Ga. (Michie) 1926, section 5587; *Ayer* v. *Chapman*, 147 Ga. 715, 95 S. E. 257, a case very similar to the case at bar. See also *Norris* v. *Richardson*, 151 Ga. 31, 105 S. E. 493, and *Moate* v. *Rives*, 146 Ga. 425, 91 S. E. 420.

*Indiana:* "When an occupant of land has color of title thereto, and in good faith has made valuable improvements thereon." Burns Ann. Ind. Stat. (1926) section 1158; *Godell* v. *Starr*, 127 Ind. 198, 26 N. E. 793.

*Iowa:* "Where an occupant of real estate has color of title thereto, and in good faith has made valuable improvements thereon." Stat. Iowa (1919) page 1912, section 6406. *Parsons* v. *Moses*, 16 Iowa 440, 446; *Read* v. *Howe*, 49 Iowa 65.

In *Beard* v. *Dansby*, 48 Ark. 183, 186–187, 2 S. W. 701, 702, the court says:

"The constructive notice of an adverse title, which the law implies from the registry of a deed, is not sufficient to preclude the occupant from recovering for improvements, if he, in fact, purchased in good faith and under the supposition that he was obtaining a good title in fee. Actual notice is the test—that is, either knowledge of an outstanding paramount title, or of some circumstance from which the court or jury may fairly infer that he had cause to suspect the invalidity of his own title. Now, the mere fact that the defect in the title would have been disclosed upon an examination of the public records does not bring such knowledge home to him; for it is not inconsistent with his ignorance of the existence of such a deed, nor with an honest belief that his title is uncontested. Sedg. & Wait on Trial of Land Titles, section 696; *Whitney* v. *Richardson*, 31 Vt. 300.

"The only requirements of the act are, that the occupant

---

*Kentucky:* "If any person, believing himself to be the owner, by reason of a claim in law or equity, the foundation of which being of public record." Carrol's Ky. Stat. (1930) page 1955, section 3728; *Walker* v. *Fields*, 147 Ky. 380, 144 S. W. 74; *Jackson* v. *Claypool*, 179 Ky. 662, 201 S. W. 2 (defendant held under void tax deed).

*Michigan:* The defendant shall be allowed for improvements made on the property, "Provided  *  *  , or provided the same shall have been occupied for a less time than six years under a color of title and in good faith." Howell's Mich. Stat. 5 (2 ed.) page 5169, section 13, 195. *Cleland* v. *Clark*, 123 Mich. 179, 81 N. W. 1086, 81 Am. St. Rep. 161, and note; *Petit* v. *Flint & P. M. R. Co.*, 119 Mich. 492, 78 N. W. 554, 75 Am. St. Rep. 417.

*Minnesota:* "Where any person under color of title in fee, and in good faith, has peaceably taken possession of any land for which he has given a valuable consideration" he shall not be ejected unless compensation be made him for improvements made "previous to actual notice of the claim." Gen. St. Minn. (1878) chapter 75, section 15; *Wheller* v. *Merriman*, 30 Minn. 372, 15 N. W. 665 (defendant held under quitclaim deed which recited that grantor held under a tax deed, which was afterward held to be void); *Northern Inv. Co.* v. *Bargquist*, 93 Minn. 106, 100 N. W. 636.

*Mississippi:* "A defendant in an action of ejectment shall be compensated for permanent improvements made by him; but a defendant shall not be entitled to such compensation for improvements or taxes unless he claim the premises under some deed or contract of purchase acquired or made in good faith." Code Miss. (1930) volume 1, chapter 25, section 1474; *Cole* v.

should have had peaceable possession, at the time the improvements were made, under color of .title and under the belief that he was the owner of the land. Any instrument having a grantor and grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title. * * *

"Good faith, in its moral sense, as contradistinguished from bad faith, and not in the technical sense in which it is applied to conveyances of title, as when we speak of a *bona fide* purchaser, meaning thereby a purchaser without notice, actual or constructive, is implied in the requirement that he must believe himself the true proprietor. It must be an honest belief, and an ignorance that any other person claims a better right to the land."

*Johnson,* 53 Miss. 94; *Gaines* v. *Kennedy,* 53 Miss. 103; *Emrich* v. *Ireland,* 55 Miss. 390; *Citizens' Bank* v. *Costanera,* 62 Miss. 825; *Canal Bank* v. *Hudson,* 111 U. S. 66, 78 *et seq.,* 4 S. Ct. 303, 28 L. Ed. 354.

*Missouri:* A defendant against whom a judgment or decree shall be given for land, may recover "for all improvements made by him in good faith * * prior to his having had notice of such adverse title." Rev. Stat. Mo. (1919) Art. 4, section 1834; *Brown* v. *Baldwin,* 121 Mo. 106, 25 S. W. 858; *Kugel* v *Knuckles,* 95 Mo. App. 670, 69 S. W. 595; *Marlow* v. *Liter,* 87 Mo. App. 584; *Pierce* v. *Rollins,* 60 Mo. App. 497; *Gallenkamp* v. *Westmeyer,* 116 Mo. App. 680, 93 S. W. 816; *Richmond* v. *Ashcraft,* 137 Mo. App. 191, 117 S. W. 689; *Michalski* v. *Grace,* 151 Mo. App. 631, 132 S. W. 333. That this statute is remedial and should be liberally construed, see *Cox* v. *McDivit,* 125 Mo. 358, 28 S. W. 597, and *Eisberg* v. *Phillips,* 197 Mo. App. 329, 194 S. W. 1075.

*Oregon:* "When permanent improvements have been made upon the property by the defendant * * holding under color of title adversely to the claim of plaintiff in good faith" he shall be allowed for the improvements. Or. Laws (Olson 1920), section 330. *Watson* v. *Hagen,* 65 Or. 571, 133 Pac. 66 (defendant held under void tax deed).

*Tennessee:* "Persons holding possession in good faith, under color of title, are entitled to have the value of their permanent improvements set off against the rents and profits." Ann. Code Tenn. 1919 (Shannon), title 2, chapter 1, section 5009; *Howard* v. *Massengale,* 13 Lea (Tenn.), 577.

*Vermont:* "If the defendant has * * purchased the lands recovered * * * supposing at the time of such purchase the title to be good in fee * * * such defendant shall recover of the plaintiff the value of the improvements made upon the land by him." Gen. L. of Vermont (1917), chapter 106, section 2131; *Whitney* v. *Richardson,* 31 Vt. 300; *Rutland R. Co.* v. *Chaffee,* 72 Vt. 404, 48 Atl. 700.

*Wisconsin:* Recovery for improvements permitted where made by a "party in possession * * while holding adversely by color of title asserted in good faith, founded on descent or any written instrument." Wis. Stat. (1898), section 3096; *Green* v. *Dixon,* 9 Wis. 532, 540; *Blodgett* v. *Hitt,* 29 Wis. 169; *Zwietusch* v. *Watkins,* 61 Wis. 615, 21 N. W. 821 (defendant held under a void tax deed).

In *Read* v. *Howe*, 49 Iowa 65, the court says:

"Such (the recordation of a *lis pendens*) cannot affect the conscience. If constructive notice of an adverse claim excludes good faith within the meaning of the statute, there would be no case in which an occupying claimant can have an allowance. If constructive notice would exclude good faith, most certainly actual notice would. But he who makes improvements, under mere color of title, always has actual or constructive notice that some other person holds the legal title.

"A purchaser, or incumbrancer, it is true, is affected with constructive notice of a *lis pendens* or recorded conveyance or incumbrance, however honest he may be. This rule is necessary for the just protection of those holding the anterior rights. The importance of protecting those rights is so great as to justify putting the subsequent purchaser or incumbrancer upon his diligence, and making his good faith immaterial. An occupying claimant's rights, however, are based expressly upon good faith, and this is so with good reason. It is eminently proper that he should be protected against his innocent mistake, and the owner of the land prevented from gaining what he has not paid for."

In *Petit* v. *Flint & P. M. R. Co.*, 119 Mich. 492, 78 N. W. 554, 75 Am. St. Rep. 417, the court says: "The statute (section 7836, How. Ann. St.) affirms an equitable right, and should receive no technical construction which will interfere with the purposes aimed at. The good faith intended by this statute means honest belief of the occupant in his right or title * * *. The fact that diligence might have shown defendant that it had no title does not negative good faith."

In *Cole* v. *Johnson*, 53 Miss. 94, the court says:

"It is insisted that, inasmuch as the defects in the probate court proceedings under which the complainant purchased were patent upon the record, and could have been ascer-

tained by inspection, the complainant cannot claim to have become a purchaser * * * in good faith. * * *

"Does the requirement that an occupant of real estate, demanding compensation for valuable improvements erected thereon, shall claim the premises under some deed or contract of purchase, made or acquired in good faith, import that such claim cannot be maintained, if the purchaser could by any possible research have discovered the invalidity of his title? It was so stated in *Learned* v. *Corley*, 43 Miss. 687. * * * After mature reflection, we must announce our dissent from so much of the opinion as holds that the value of permanent improvements is not recoverable, where the defect in the title is discoverable by an examination of the records of the county.

"The requirement that the party making the improvements 'shall claim the premises under some deed or contract of purchase made or acquired in good faith,' must mean nothing more than an honest belief on his part that he is the true owner. The expression, 'some deed or contract of purchase,' of itself negatives the idea that it is true title which he must have, and plainly indicates that what the law recognizes as 'color of title' will be sufficient. Indeed, if he were the purchaser of the true title, there would be no occasion for him to invoke the protection of the statute, since he could never be dispossessed, and hence would never be compelled to make claims for improvements. But does not the rule that he shall be denied them, if by an investigation he could have discovered the defect in the title, practically abrogate the statute?

"There are very few defects of title which an investigation of the records, sufficiently prolonged and accurate, will not disclose; and what limit shall be put upon the duty of search? Can we say that he shall be bound by defects that are apparent, and not by those that are intricate and doubtful? How, then, shall we determine what description of defects such a classification will embrace? * * *

"Our view is, that, in order to deprive the occupant of land under color of title of the value of the permanent improvements erected thereon, there must be brought home to him either knowledge of an outstanding paramount title, or some circumstance from which the court or jury may fairly infer that he had cause to suspect the invalidity of his own title, but that this cannot be inferred merely because it could have been demonstrated by the records of the county.

"There is in law a degree of negligence known as *'crassa negligentia,'* which is said to be akin to fraud, and to carry with it many of its consequences. Where the purchase is made under circumstances which would warrant the imputation of such negligence to the purchaser, as if, for instance, a deed was received, without inquiry, from a mere stranger to the land, who had neither possession thereof nor any actual or apparent claim thereon, the claim of being a *bona fide* purchaser might well be rejected. But we do not think that such imputation can ever be predicated of a judicial sale because of defects in the record, where the land has been bought by a person disconnected with the proceedings, and with no actual notice or suspicion of the irregularities contained in them. Whether a different rule would prevail where the land was bought by a party to the suit, it is not necessary now to decide."

In *Whitney* v. *Richardson*, 31 Vt. 300, 308, the court says:

"It is also claimed by the defendants that the record of the deed from James to Lyman Richardson was conclusive notice to all who held by deed from Lyman, that he only held a life estate, and that they, holding under him, could only hold a life estate; and that such constructive notice, as matter of law, precludes the plaintiff from claiming that at the time of the purchase he supposed he was acquiring a good title in fee.

"But such constructive notice may exist without any

actual knowledge or notice to the plaintiff, or his grantors, of the true state of the title, or even of the existence of the deed on record. Without such actual knowledge the plaintiff may honestly have believed, and the jury in this case have found that he did believe, that he was purchasing from Lyman Richardson a good title in fee.  *  *  *

"The right of the plaintiff is made by the statute to depend, and in equity ought. to depend, upon his *bona fide* supposition that he was buying a title in fee; and not upon whether he actually was buying the fee, or might by a diligent search of the records have discovered that his grantor only owned a life estate.

"Under our registry system purchasers are affected with constructive notice of the record title, and in many, perhaps in most, cases the title of the true owner appears of record. Has it ever been held or supposed that the honest purchaser and occupant could be deprived of the value of his betterments by the existence upon record of a title superior to his own? Was not this one of the evils that statute was intended to remedy?"

In *Brown* v. *Baldwin*, 121 Mo. 106, 115, 25 S. W. 858, 860, the court says:

"It is very generally held that the constructive notice of an adverse title which the law implies from the record of deeds, is not of itself sufficient to preclude a recovery for improvements if the occupant in good faith, purchased the land, believing he was obtaining a good title.  *  *  *

"* * * 'Notice is *actual* or *constructive;* and actual notice is divided into *direct* or *positive* and indirect, implied or *presumptive* notice; the difference between *presumptive* notice and *constructive* notice being that the former is an inference of fact which is capable of being explained or contradicted; while the latter is a conclusion of law which cannot be controverted.  *  *  *  It is actual when the purchaser either knows of the existence of the adverse claim

or title, or is conscious of having the means of knowledge, although he may not use them. Constructive notice is a legal presumption, and will be conclusive unless rebutted, and in many cases it cannot be gainsayed or denied, even by evidence of the absence of actual knowledge or notice. * * *

"* * * In order to prevent an occupant recovering the value of the permanent improvements put by him on the land, he must have had notice of his adversary's title before constructing or making them; * * * this notice is not mere constructive notice which the deed records would impart, but actual notice as understood and defined by courts of equity, that is to say, either actual knowledge of the opponent's title, or notice of some fact or circumstance that would lead a man of ordinary prudence to such an inquiry as would lead to knowledge of his adversary's title if honestly followed."

In applying the equity rule, independently of statutory provisions, the Supreme Court of Alabama, in *Gordon Rankin & Co.* v. *Tweedy*, 74 Ala. 232, 234, 49 Am. Rep. 813, says:

"The rule prevails only in favor of a *bona fide* occupant or possessor of land. He must be one who is not only in possession, but who asserts adverse ownership under color or claim of title. * * *

"* * * A *bona fide* occupant or possessor has been defined to be, 'one who not only *honestly supposes* himself to be vested with the true title, but *is ignorant that the title is contested by any other person claiming a superior right to it.*' *Green* v. *Biddle*, 8 Wheat. 1, 5 L. Ed. 547; *Cole* v. *Johnson*, 53 Miss. 94; Sedg. & Wait's Trial of Titles to Land, section 694.

"*Actual notice* of such adverse claim, according to the better rule, is generally held to be fatal to the occupant's claim for improvements, although mere *constructive notice,*

such as the law implies from the record of a deed, is deemed insufficient. This principle seems to be generally adopted everywhere, so far as I have been able to discover, except in the State of Texas, where a different rule prevails, and actual notice is not regarded as a conclusive test of good faith." ·

I find only two States, Virginia and West Virginia, which, I think, may properly be said to hold the broad doctrine that under a statute such as section 5491 the constructive notice given by the records is sufficient in itself to bar an occupant from recovering for improvements. The cases commonly cited from these States to sustain the statement that they so hold are *Dawson* v. *Grow*, 29 W. Va. 333, 1 S. E. 564; *Hall* v. *Hall*, 30 W. Va. 779, 5 S. E. 260; *Bodkin* v. *Arnold*, 45 W. Va. 90, 30 S. E. 154; *Haymond* v. *Camden*, 48 W. Va. 463, 37 S. E. 642; *Yock* v. *Mann*, 57 W. Va. 187, 49 S. E. 1019; *Nixdorf* v. *Blount*, 111 Va. 127, 68 S. E. 258 (dictum); *McDonald* v. *Rothgeb*, 112 Va. 749, 72 S. E. 692, Ann. Cas. 1916B, 63; *Smith* v. *Woodward*, 122 Va. 356, 94 S. E. 916. *Effinger* v. *Hall*, 81 Va. 94, is also cited to this effect, but as has been seen, it does not so hold even by way of dictum. The Virginia cases cited have already been examined at length; and I shall below consider briefly the West Virginia cases.

In *Dawson* v. *Grow*, 29 W. Va. 333, 1 S. E. 564, the court held that constructive notice such as is given by the mere recordation of a deed is sufficient to bar recovery under a statute such as section 5491, Code Va. 1919. But the court in that case, I think, made the same error which the Virginia court has made in the three cases in which that doctrine has been heretofore announced, that is, that sections 1–4, chapter 136, Code 1849, was merely the enactment of the equitable doctrine with reference to recovery for improvements as theretofore applied. The case is, I think, based upon a misconception of what had been held

in the Virginia cases up to that time, and the erroneous view that the statute was not a remedial statute to be reasonably construed, but a statute in derogation of the common law which should be strictly construed and limited in its application.

In *Hall* v. *Hall*, 30 W. Va. 779, 5 S. E. 260, the defendant who made the improvements was a *pendente lite* purchaser, as was the case in *Smith* v. *Woodward*, 122 Va. 356, 94 S. E. 916, and *Haven* v. *Adams*, 8 Allen (Mass.), 363. In such cases some courts seem to hold that the purchaser is estopped to deny lack of knowledge of the facts shown by the proceedings in the cause, just as he will not be heard to say that he did not know the law of the case.

In *Williamson* v. *Jones*, 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891, the mistake which caused the defendant to lose the land was a mistake of law and not of fact.

In *Haymond* v. *Camden*, 48 W. Va. 463, 37 S. E. 642, and *Yock* v. *Mann*, 57 W. Va. 187, 194, 49 S. E. 1019, the evidence failed to show that the so-called improvements had enhanced the value of the land recovered. *Bodkin* v. *Arnold*, 45 W. Va. 90, 30 S. E. 154, was a case in which the defendant making the improvements had actual notice.

New Hampshire and Texas are also cited as holding the view that constructive notice alone will bar a recovery for improvements. The cases commonly cited from these States to sustain this proposition are: *Tripe* v. *Marcy*, 39 N. H. 439, but see *Wendell* v. *Moulton*, 26 N. H. 41, at page 65; *Daugherty* v. *Yates*, 13 Tex. Civ. App. 646, 35 S. W. 937; and *West* v. *Peters* (Tex. Civ. App.), 287 S. W. 81. But an examination of the New Hampshire and Texas cases makes it, to say the least, doubtful whether this doctrine is adhered to in those States.

The New Hampshire statute under consideration in

*Wendell* v. *Moulton*, 26 N. H. 41, at page 65, and *Tripe* v. *Marcy*, 39 N. H. 439, at page 450, reads:

"Section 5. Any person against whom any action may be brought for the recovery of real estate, may with his plea file a brief statement, setting forth that he and the persons under whom he claims, have been in the actual peaceable possession thereof, under a supposed legal title, for more than six years before the action was commenced, and that the value thereof has been increased by them by buildings or other improvements." New Hampshire Rev. Stat. 1853, chapter 190, section 3.

Sections 6 and 7 of this statute provide for the recovery for improvements placed on the property under the conditions mentioned in section 5.

*Wendell* v. *Moulton*, 26 N. H. 41, at page 65, was a case in which the defendant had constructive notice of the defects in his title; but the court says: "It is not necessary that the occupants show a proper title, as contended in the argument. Any species of title, which, if valid, would be a legal one, is sufficient; and if the occupants in good faith, suppose their title to be a legal one, whatever its character may be, the requirement of the statute is answered."

*Tripe* v. *Marcy*, 39 N. H. 439, was a case in which the mortgagee sued to recover the land because of the non-payment of a duly recorded mortgage given him by a grantor of the defendant. While there is some broad language in the case which tends to support the view taken by the court in the instant case, the controlling principle upon which the case was decided is thus stated by the court: "In these cases the relations between the parties are regulated by the conveyance, and the mortgagor may have back his land by paying his debt; otherwise the mortgagee may take it, but he cannot, upon any sound principle, be charged with improvements which the mortgagor has made and sees fit to surrender, rather than pay his debt. As it

is with the mortgagor, so it must be with his grantee, having notice of the mortgage."

That a person who can prevent the recovery of land by paying off a mortgage or judgment lien thereon may not refuse to pay the debt and yet recover for improvements is a well recognized exception to the rule that constructive notice does not bar recovery under statutes such as section 5491, Code Va. 1919, and is a statutory exception in Virginia.

*Daugherty* v. *Yates*, 13 Tex. Civ. App. 646, 35 S. W. 937, merely holds that as the deed to the person claiming for improvements was only a quitclaim deed, he could not claim to be a purchaser in good faith.

In *West* v. *Peters* (Tex. Civ. App.), 287 S. W. 81, 86, the defendant who was denied recovery for improvements had purchased a tract of wild land from Rowe, who was claiming title against the State under the ten year statute of limitations. As pointed out by the court, "there was no evidence tending to show that Rowe was ever in possession of the land, or any part thereof." The defendant made no examination of the records and testified he relied solely upon Rowe's statement that he could convey him a good title. All that was held by the court was that under this state of facts the failure to examine the records prevented the defendant from being a purchaser in good faith. The case would seem to fall in that class of cases described by the Mississippi court as falling within the doctrine of *"crassa negligentia"* which is said to be akin to fraud, and to carry with it many of its consequences."

However, in *Shipp* v. *Cartwright* (Tex. Civ. App.), 182 S. W. 70, 71, the court held that it was error to have instructed the jury that they must find against the claim for improvements if they believed that he "knew of the adverse claim" of the plaintiff before he made the improvements, saying: "The charge is an incorrect statement of

the law, for Griffin could have known of the plaintiff's adverse claim and yet could in good faith have supposed himself to be the true owner and have been ignorant of a better right in plaintiff." This is wholly inconsistent with a holding that the constructive notice given by the records is sufficient to bar a recovery for improvements.

The true rule, I think, is that the *bare* fact that the defect in the defendant's title and the paramount title of the true owner could have been discovered if the defendant had examined the records is not alone and of itself sufficient to bar a recovery for improvements under section 5491. There must have been some peculiar fact or circumstance which rendered the failure to examine the records negligent. The failure to examine the records must have occurred under circumstances specially calling for some such caution, or which should have excited suspicion. The true intendment of the statute is to allow the defendant against whom there has been a decree or judgment for the recovery of land to recover for the enhancement of the value of the premises by permanent improvements put thereon by him, or his grantor, while holding the land under a title which he *in fact, upon reasonable grounds,* believed to be good.

I have not here considered the extent to which the fact that the person seeking to recover for improvements is a purchaser *pendente lite* is a fact that calls for special caution on his part to examine the proceedings in that suit, or the extent to which the fact that the immediate deed under which he holds contains recitals which would put an ordinarily prudent man upon inquiry is a fact which should excite his suspicion and call for special caution. These questions are not involved in the case here before us.

BROWNING, J., concurs in dissent.